CHAMPION MOTOR GROUP,
INC., Plaintiff,

v.

VISONE CORVETTE OF MASSACHU-
SETTS, INC. and Anthony Visone
a/k/a Tony Visone, Defendants.

No. 96 CV 4630(NG).

United States District Court,
E.D. New York.

Jan. 29, 1998.

Sigmund S. Semon, Semon & Mondshein, Woodbury, NY, for Plaintiff.

Michael J. Siris, Manhasset, NY, for Defendant.

## OPINION AND ORDER

GERSHON, District Judge.

Invoking the Court's diversity jurisdiction, plaintiff Champion Motor Group ("Champion") brings an action against defendants Visone Corvette of Massachusetts ("VCM") and its principal Anthony Visone ("Tony Visone") in his individual capacity for breach of contract and fraud arising out of a failed relationship to market and sell used Chevrolet Corvette automobiles at plaintiff's location on Long Island, New York. Defendants move to dismiss the complaint under Rules 12(b)(2) and 12(b)(6) of the Federal Rules of Civil Procedure.

## THE COMPLAINT

Plaintiff alleges the following: Champion is an automobile dealership located on Long Island, New York. VCM, incorporated and headquartered in Massachusetts, is a large dealer of used Chevrolet Corvette automobiles. Tony Visone is also a resident of Massachusetts. During the summer of 1995, VCM and its principal Tony Visone approached plaintiff with a proposal for a business relationship to sell used Corvettes at plaintiff's location on Long Island. Defendants suggested a "joint strategic alliance",

in which Champion would market and sell used Corvettes that are owned and provided by defendants. The parties would also share in the marketing of products and services, originate a common point of sale, develop franchises and jointly manage the inventory of vehicles. Defendants offered plaintiff full access to their telemarketing systems, expanded floor plan lines, working capital and strategic planning and the possibility of developing additional profitable markets.

Negotiations between the parties continued for approximately a year. On June 18, 1996, an agreement was reached in which defendants appointed plaintiff to sell used Corvettes to be provided by the defendants at plaintiff's location on Long Island, New York. In furtherance of their agreement, plaintiff leased new commercial space for the purpose of showcasing and storing defendants' vehicles, but only after defendants' representative had approved the site. Plaintiff also incurred costs of surveying, engineering and drafting associated with the new location and the expenses involved in acquiring new equipment and training its employees in accordance with defendants' procedures.

Defendants, it is alleged, breached and wholly repudiated the agreement. They refused to supply and deliver the promised Corvettes and failed to execute any of their obligations under the agreement. Plaintiff also alleges that defendants knowingly misrepresented their commitment to execute an agreement and, in fact, never intended to appoint plaintiff Champion as its exclusive sales agent for Long Island. Instead, defendants fraudulently induced plaintiff to incur significant expenses for the sole purpose of gaining valuable marketing expertise in the plaintiff's geographical region of Long Island, New York.

## PERSONAL JURISDICTION

Both defendants claim a lack of personal jurisdiction.

In deciding a pretrial motion for lack of personal jurisdiction, a district court has considerable procedural leeway. It may determine the motion on the basis of affidavits alone; or it may permit discovery in aid of the motion; or it may conduct an evidentiary hearing on the merits of the motion. If the court chooses not to conduct a full-blown evidentiary hearing on the motion, the plaintiff need make only a prima facie showing of jurisdiction through its own affidavits and supporting materials.

*Marine Midland Bank v. Miller,* 664 F.2d 899, 904 (2d Cir.1981) (internal citations omitted); *see also New Moon Shipping Company, Limited v. Man B & W Diesel Ag,* 121 F.3d 24, 29 (2d Cir.1997). In analyzing the affidavits, the facts are construed in the light most favorable to the plaintiff with all doubts resolved in its favor, "notwithstanding a controverting presentation by a moving party." *A.I. Trade Finance, Inc. v. Petra Bank,* 989 F.2d 76, 79–80 (2d Cir.1993). A disputed fact may be resolved in a manner adverse to the plaintiff only after an evidentiary hearing. *CutCo Indus., Inc. v. Naughton,* 806 F.2d 361, 365 (2d Cir.1986). Here, discovery has not been completed, and there has been no evidentiary hearing; plaintiff therefore need only offer prima facie evidence of personal jurisdiction.

■ In a diversity action, a federal district court must examine the forum state's general jurisdictional or long-arm jurisdictional statutes to determine whether personal jurisdiction exists over a nonresident defendant. *Cosmetech International, LLC v. Der Kwei Enterprise and Co., Ltd.,* 943 F.Supp. 311, 317 (S.D.N.Y.1996). Plaintiff argues that VCM and Tony Visone are subject to personal jurisdiction under New York Civil Practice and Rules ("CPLR") § 302(a), which provides, in relevant part:

As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any non-domiciliary ... who in person or through an agent: (1) transacts any business within the state or contracts anywhere to supply goods or services in the state.

Long-arm jurisdiction "reaches only a defendant who purposefully avails itself of the privilege of conducting activities within New York, thus invoking the benefits and protections of its laws." *Viacom International,*

*Inc. v. Melvin Simon Productions, Inc.*, 774 F.Supp. 858, 862 (S.D.N.Y.1991) (internal quotations omitted). CPLR § 302(a)(1) "is a 'single act statute', and proof of one transaction in New York is sufficient to invoke jurisdiction, even though the defendant never enters New York, so long as the defendant's activities were purposeful and there is a substantial relationship between the transaction and the claim asserted." *Kreutter v. McFadden Oil Corp.*, 71 N.Y.2d 460, 467, 527 N.Y.S.2d 195, 522 N.E.2d 40 (1988). Although CPLR § 302(a)(1) requires only limited New York activity, there must be "some articulable nexus between the business transacted and the cause of action sued upon." *McGowan v. Smith*, 52 N.Y.2d 268, 272, 437 N.Y.S.2d 643, 419 N.E.2d 321 (1981). The totality of circumstances must be evaluated to determine whether defendants have engaged in some purposeful activity in New York in connection with the matter in question. *CutCo Industries, Inc. v. Naughton*, 806 F.2d 361, 365 (2d Cir.1986).

■ The alleged contract between VCM and Champion required VCM to ship used Corvettes for sale at plaintiff's location in New York. The defendants have submitted extensive affidavits that, while contesting the existence of a contract, nonetheless acknowledge that the parties entered into extensive negotiations for the sale of defendants' Corvettes in New York. Plaintiff submitted the affidavit of Gary Brustein, the President of Champion, which states that defendants' representative traveled to New York for weekly meetings; defendants installed a computer in plaintiff's location in New York; defendants trained plaintiff's employees in operations and computer procedure; and defendants' representative approved the location of plaintiff's new showroom on Long Island, New York. Indeed, for the most part, these allegations are not disputed. The purposeful activities of VCM in New York, directly related to the alleged contract and the alleged fraud, are sufficient to satisfy the requirements of CPLR 302(a)(1) for transacting business.

■ Tony Visone argues that because his involvement was limited to "two isolated trips" to New York, in his capacity as an officer of VCM, there is no personal jurisdiction over him. In some jurisdictions, the fiduciary shield doctrine protects individuals from an exercise of jurisdiction if their contacts with the forum state are solely in a corporate capacity. The shield, however, is unavailable to defeat jurisdiction under the New York long-arm statute. *Kreutter v. McFadden Oil Corp.*, 71 N.Y.2d 460, 470, 527 N.Y.S.2d 195, 522 N.E.2d 40 (1988) ("Nothing in the statute's language or the legislative history relating to it suggests that the Legislature intended to accord any special treatment to fiduciaries acting on behalf of a corporation or to insulate them from long-arm jurisdiction for acts performed in a corporate capacity."). Brustein's affidavit establishes, prima facie, that Tony Visone was personally involved in the negotiation and commencement of the sale agreement with Champion. Tony Visone personally initiated the proposed relationship with Champion to sell used Corvettes, hosted a tour of his facility in Boston for plaintiff's representatives, and was continuously engaged in the negotiations. He also traveled to New York to complete the agreement, to view the commercial space leased by plaintiff for a showroom, and to assist in the start-up of plaintiff's operations. On the basis of his purposeful activities in the transaction of business in New York, Tony Visone is subject to personal jurisdiction in New York under § 302(a)(1).

■ Jurisdiction over Tony Visone is also appropriate because of his relationship with VCM. Although jurisdiction over a corporation is normally premised upon jurisdiction over an individual defendant through agency principles, the opposite is also possible: a corporation can act as the agent of a corporate officer so that its activities here can subject the officer to jurisdiction under CPLR 302(a)(1). *Kreutter v. McFadden Oil Corp.*, 71 N.Y.2d at 467, 527 N.Y.S.2d 195, 522 N.E.2d 40; *Retail Software Services, Inc. v. Lashlee*, 854 F.2d 18, 22 (2d Cir.1988). Before a defendant corporation may be found to be acting as the agent of a corporate officer, courts require that the officer be a "primary actor" in the transaction carried out by the corporation. *See, e.g., Kinetic Instruments, Inc. v. Lares*, 802 F.Supp. 976,

984 (S.D.N.Y.1992). Being a "primary actor" requires that the corporate officer had knowledge of, and consented to, the transaction carried out by the corporation and exercised some control over the corporation. *Id.* Under plaintiff's evidence, Tony Visone was a "primary actor" in the transaction with Champion.

## MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

"[A] complaint should not be dismissed for failure to state a claim unless it appears beyond a doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). For purposes of a motion to dismiss, the allegations of the complaint must be taken at face value. *California Motor Transport Co. v. Trucking Unlimited*, 404 U.S. 508, 515, 92 S.Ct. 609, 30 L.Ed.2d 642 (1972).

A federal court exercising diversity jurisdiction must follow the law determined by the highest court of the state whose law is applicable to the resolution of the dispute. *Plummer v. Lederle Laboratories*, 819 F.2d 349, 355 (2d Cir.), *cert. denied*, 484 U.S. 898, 108 S.Ct. 232, 98 L.Ed.2d 191 (1987). The citations to New York law in the briefs demonstrate the parties' belief that New York law controls this case. For purposes of this motion, I will assume that New York law applies.

In support of their motion to dismiss, defendants have submitted extensive factual affidavits including those of defendant Tony Visone and defendants' representative Daniel Wilensky. Federal Rule of Civil Procedure 12(b) provides that "[i]f, on a motion . . . to dismiss for failure to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment. . . ." FED. R.CIV.P. 12(B). The court has discretion, however, to "exclude the additional material and decide the motion on the complaint alone." *Kopec v. Coughlin*, 922 F.2d 152, 154

(2d Cir.1991) (internal quotations omitted). At this stage of the proceedings, there is no sound reason to convert the motion into a motion for summary judgment. Therefore, defendants' affidavits, insofar as they bear on the merits, are disregarded.

### Breach of Contract Claim

■ Defendants argue that plaintiff's breach of contract claim must be dismissed on the ground that plaintiff does not allege a written agreement, as required by the Statute of Frauds, N.Y.GEN.OBLIG.L. 5–701. At this stage of the proceedings, before the completion of discovery, it cannot be determined whether the Statute of Frauds bars plaintiff's claim for breach of contract. The complaint itself does not identify the length of the contract or whether plaintiff relies on a writing. Even if plaintiff proves unable to establish the existence of a signed writing, however, plaintiff may nonetheless be able to establish the existence of an exception to the Statute of Frauds.[1]

### Fraud Claim

■ Defendants move to dismiss plaintiff's fraud claim, invoking the principle that, under New York law, a fraud claim cannot be maintained where the only misrepresentation alleged is that the defendant did not intend to fulfill its contractual obligations. *See, e.g., Grappo v. Alitalia Linee Aeree Italiane, S.p.A.*, 56 F.3d 427, 434 (2d Cir.1995) ("A cause of action does not generally lie where the plaintiff alleges only that the defendant entered into a contract with no intention of performing it."); *Rocanova v. Equitable Life Assurance Society of the United States*, 83 N.Y.2d 603, 614, 612 N.Y.S.2d 339, 634 N.E.2d 940 (1994) ("[A] contract action cannot be converted to one for fraud merely by alleging that the contracting party did not intend to meet its contractual obligations."). Fraud claims premised solely upon an alleged breach of contractual duties are "redundant", *see, e.g., Volk v. Liggett Group, Inc.*, 1997 WL 107458, *3 (S.D.N.Y.1997); such "bootstrapping" of a breach of contract claim into a fraud claim is disallowed. *See,*

---

1. For example, and solely by way of illustration, plaintiff alleges that it incurred significant expenses to comply with the terms of the alleged contract. Plaintiff's breach of contract claim may therefore prove to fall within the partial performance exception to the Statute of Frauds.

e.g., *Sudul v. Computer Outsourcing Services*, 868 F.Supp. 59, 62 (S.D.N.Y.1994).

The Court of Appeals for the Second Circuit recently reiterated the requirements under New York law for maintaining a distinct fraud claim that arises from the same transaction that created the breach of contract claim. The plaintiff must either (1) demonstrate a legal duty separate from the duty to perform under the contract; (2) demonstrate a fraudulent misrepresentation collateral or extraneous to the contract; or (3) seek special damages that are caused by the misrepresentation and unrecoverable as contract damages. *Bridgestone/Firestone, Inc. v. Recovery Credit Services, Inc.*, 98 F.3d 13, 20 (2d Cir.1996). A fraud claim therefore may survive a motion to dismiss where "the allegations contained [in the fraud claim] are separate and distinct from those giving rise to the breach of contract claim." *Oei v. Citibank*, 957 F.Supp. 492, 520 (S.D.N.Y. 1997) (internal quotations omitted).

Here, the fraud claim sets forth an alternative claim independent of the contract. A fair reading of the complaint reveals plaintiff's allegation that defendant "never intended to appoint plaintiff as its exclusive sales agent or deliver Corvette motor vehicles for sale, or enter into any agreement with plaintiff." Complaint ¶ 25. It alleges that defendants fraudulently induced plaintiff to incur significant expenses in anticipation of becoming defendants' sales agent to sell its used Corvettes when defendants had no intention of entering into any agreement with plaintiff and that plaintiff was induced to incur significant expenses in order to afford defendants the expertise of marketing its cars in plaintiff's geographical area. *Id.* Plaintiff's fraud claim does not simply reiterate the breach of contract claim because it does not allege the existence of the contract. Rather, it is defendants' inducement of the plaintiff to incur significant expenses, in anticipation of a contract that defendants had no intention of entering into, that constitutes the fraud claim. As it involves a promise that is extraneous or collateral to the terms of the alleged contract, plaintiff's fraud claim states a valid alternative claim to the breach of contract claim.

Defendants also move to dismiss plaintiff's fraud claim on the ground that it was not pled with the particularity required by Federal Rule of Civil Procedure 9(b). In order to satisfy Rule 9(b), allegations of fraud "must be specific enough to give the defendants 'a reasonable opportunity to answer the complaint' and must give defendants 'adequate information' to allow defendants to frame a response." *Bharucha v. Reuters Holdings PLC*, 810 F.Supp. 37, 41 (E.D.N.Y.1993) (quoting *Ross v. A.H. Robins Co.*, 607 F.2d 545, 557 (2d Cir.1979), *cert. denied*, 446 U.S. 946, 100 S.Ct. 2175, 64 L.Ed.2d 802 (1980)). A complaint should allege the time, place, speaker and content of alleged misrepresentations. *See Ouaknine v. MacFarlane*, 897 F.2d 75, 79 (2d Cir.1990). However, "the complaint need not specify the time, place and content of each mail communication where the nature and mechanics of the underlying scheme is sufficiently detailed, and it is enough to plead the general content of the misrepresentation without stating the exact words." *Center Cadillac, Inc. v. Bank Leumi Trust Co. Of New York*, 808 F.Supp. 213, 229 (S.D.N.Y.1992).

Here, the complaint is particular. The complaint alleges that from August 1995 to June 1996, in each of its statements by phone or mail, the defendants continuously misrepresented their intent to enter into a joint strategic alliance with Champion to market and sell used Corvettes. It alleges that defendants purposely misrepresented their commitment to appoint plaintiff as its exclusive sales agent, or enter into any agreement with plaintiff at all, in order to gain "expertise of marketing its products in the geographical area and customer market of plaintiffs." The complaint sufficiently identifies Tony Visone and other representatives of VCM as the source of the misrepresentations and alleges that the misrepresentations were made in the course of negotiations between the parties from August 1995 to June 1996.

While the complaint does not specify the exact date and place of each alleged misrepresentation, it is sufficient to place defendants on notice so that they may frame a

responsive pleading. See *Giuliano v. Everything Yogurt, Inc.*, 819 F.Supp. 240, 245 (E.D.N.Y.1993). Because the complaint, viewed in the light most favorable to the plaintiff, alleges fraudulent acts with sufficient particularity, defendant's motion to dismiss Under Rule 9(b) must be denied.

**Specific Performance**

The plaintiff's third claim demands specific performance of the alleged contract between Champion and VCM, claiming that there is no adequate remedy at law. However, as plaintiff itself recognizes in its brief in opposition to this motion, specific performance is a remedy for breach of contract. It is not a distinct claim. Thus, although it was pled separately, defendants' arguments opposing specific performance are premature.

## CONCLUSION

The motion to dismiss the complaint is denied.

**SO ORDERED.**