**KARABU CORP. and Global Discount Travel Services, LLC, Plaintiffs,**

v.

**Gerald L. GITNER, Richard P. Magurno, William F. Compton, David M. Kennedy, Roden A. Brandt, and Michael J. Palumbo, Defendants.**

No. 97 Civ. 6452 (SS).

United States District Court, S.D. New York.

Aug. 3, 1998.

---

─────────

Burstein & Fass LLP, Judd Burstein, New York City, Jay Goldberg, P.C., New York City, for Plaintiffs.

O'Sullivan Graev & Karabell, LLP, John M. Delehanty, James L. Burns, New York City, for Defendants.

### OPINION AND ORDER

SOTOMAYOR, District Judge.

Defendants Gerald Gitner ("Gitner"), Richard P. Magurno ("Magurno"), William F. Compton ("Compton"), David M. Kennedy ("Kennedy"), · Roden A. Brandt ("Brandt"), and Michael J. Palumbo ("Palumbo"), move to dismiss the Complaint on the grounds of lack of personal jurisdiction, res judicata, and failure to state a claim, pursuant to Fed. R.Civ.P. 12(b)(2) and 12(b)(6). For the reasons to be discussed, the Court grants the motion to dismiss for lack of personal jurisdiction.

### BACKGROUND

The instant motion asks the Court to examine under what circumstances the senior officers of a large national corporation, who themselves do not live in New York, work in New York, or have personal dealings in New York, can nevertheless be subject to personal jurisdiction in this State based upon their corporate employer's activities in this State. As discussed below, while there are circumstances under which a corporation's New York-related activities could give rise to personal jurisdiction over its out-of-state officers and employees, such circumstances have not been alleged in this case.

Plaintiff Karabu Corporation ("Karabu") is a Delaware corporation with offices located in Mount Kisco, New York. Plaintiff Global Discount Travel Services ("Global") is a Nevada limited liability company. Both Karabu and Global are controlled by Carl Icahn. (Complaint ¶ 11.) The defendants are all senior officers of Trans World Airline ("TWA"), a major airline providing both domestic and international air transportation.

Defendant Gitner is TWA's Chief Executive Officer; defendant Magurno is its Senior Vice President; defendant Compton is its Executive Vice President of Operations; defendant Kennedy is its Chief Operating Officer and Acting Executive Vice President; defendant Brandt is its Senior Vice President of Marketing and Planning; and defendant Palumbo is its Chief Financial Officer.

This lawsuit is the latest of a series of disputes between the plaintiffs and TWA over plaintiffs' right to sell discounted TWA airline tickets. Unlike previous lawsuits, however, TWA is not a named party in this litigation. Plaintiffs have instead sued TWA's top management.

The relevant facts are as follows. On or about January 5, 1993, Karabu and TWA entered into a loan agreement in which Karabu lent TWA $200 million. TWA defaulted on its repayment obligations soon after receiving the loan. (Complaint ¶ 1.) Agreeing not to declare a default, on or about June 14, 1995, Karabu entered into another agreement with TWA, extending the maturity date of the loan. (Complaint ¶ 13.) As consideration for that extension, TWA and Karabu also entered into the Karabu Ticket Program Agreement ("the Ticket Agreement"), under which Karabu obtained the right to sell and market discount TWA airline tickets. (Id.) The Ticket Agreement was part of TWA's inducement to obtain forgiveness for its failure to pay the $190 million then due on the $200 million loan. (Complaint ¶ 15.) Under the Ticket Agreement, each ticket sold by Karabu reduces TWA's outstanding loan debt by the cost of that ticket. (Id.) In August 1995, Global executed a joinder agreement and became a party to the Ticket Agreement, thereby acquiring the same rights as Karabu to sell and market discounted TWA airline tickets. (Complaint ¶ 14.) Specifically, the Ticket Agreement provides that Karabu and Global, as parties to the Agreement, may "sell tickets through travel agencies to any 'end user.'" (Complaint ¶ 16.)

Plaintiffs contend that shortly after Global joined the Ticket Agreement and began marketing TWA tickets, defendants "directed TWA personnel to ensure that Global would

fail in its efforts to sell discount tickets by wrongfully threatening and coercing travel agencies throughout the United States either to refuse to do business with Global, cease doing business with Global or substantially reduce the volume of business that they were doing with Global." (Complaint ¶ 2.) Plaintiffs do not allege when, where or how each of the six named defendants gave such directions to TWA personnel, or what role each defendant played in the matter. According to plaintiffs, this information is "peculiarly within the knowledge of the defendants." (Complaint ¶ 18.) Plaintiffs allege, however, that as a result of defendants' directions, TWA personnel in fact "coerced numerous travel agencies into ending, limiting, or refusing to commence the marketing of the low price, discounted TWA airline tickets offered by Global." (Complaint ¶ 20.) Of the approximately fifty travel agencies allegedly coerced by TWA personnel at defendants' directions, at least five are located in New York. (*Id.*)

According to plaintiffs, TWA's coercion of travel agencies took many forms, including: threatening to cancel or canceling various travel agencies' appointments to sell TWA tickets if they continued to do business with Global; reinstating the appointments of those travel agencies that agreed not to do business with Global; threatening or commencing lawsuits against travel agencies because they conducted business with Global; threatening to dishonor or dishonoring Global's tickets secured by passengers through travel agencies; threatening to collect additional fares from passengers that secured Global's tickets through travel agencies; and falsely claiming that Global invalidly or illegally sold tickets to non-corporate travelers. (Complaint ¶ 21.) Plaintiffs contend that in directing TWA personnel to take these coercive steps, the six defendants tortiously interfered with Global's prospective economic advantage and are now liable for plaintiffs' lost profits in an amount no less than $100 million. (Complaint ¶¶ 24–25.)

## A. *Procedural History*

As indicated above, at least two other lawsuits stemming from the Ticket Agreement predate this one. In 1996, TWA filed a declaratory judgment and breach of contract action in Missouri state court against Icahn, Global and Karabu, claiming that Global and Karabu were selling discounted TWA airline tickets to the general public in violation of the Ticket Agreement. The dispute centered around the proper interpretation of the term "end user" in the clause providing that Global and Karabu could "sell tickets through travel agencies to any 'end user.'" (Complaint ¶ 16.) TWA argued that the term was intended to restrict sales of discounted TWA tickets to business travelers. Karabu and Global, on the other hand, argued that "end users" included all members of the general public, thereby permitting Global and Karabu to sell discounted TWA tickets to leisure travelers as well as business travelers. In their counterclaims against TWA for breach of contract and declaratory and injunctive relief, Global and Karabu alleged that TWA breached the Ticket Agreement by threatening and coercing travel agencies to end or limit their business relationships with Global. (*See* Ex. F to Delehanty Aff., ¶ 12.) The counterclaims did not mention the participation of any of the defendants named here, either by name or title.

On May 7, 1998, following a bench trial, the Missouri court ruled in favor of Global and Karabu, rejecting TWA's restrictive interpretation of the Ticket Agreement. *TWA v. Icahn,* No. 96CC–121, slip op. at 6–9 (Mo. Cir.Ct. May 7, 1998). However, because the Missouri Court found that Global and Karabu had not proven damages, it awarded them none. TWA has informed the Court that it is appealing the Missouri court's decision.

While the Missouri suit was still pending, in 1996, Global filed a separate action against TWA in this Court, alleging breach of contract and violations of the Sherman and Lanham Acts. *See Global Discount Travel Servs., LLC v. Trans World Airlines, Inc.,* 960 F.Supp. 701 (S.D.N.Y.1997). In this second action, Global similarly claimed that TWA personnel had coerced independent travel agencies nationwide into ceasing or reducing their business with Global. Many of the allegations that Global's complaint asserted against TWA are identical to the allegations

now asserted against the TWA officers. On March 24, 1997, I granted TWA's motion to dismiss Global's complaint, holding that Global's breach of contract claim failed to join Karabu, an indispensable party, and that Global's Sherman and Lanham Act claims failed to state a claim.[1] 960 F.Supp. at 706–08.

Global and Karabu filed the instant action in New York Supreme Court in August 1997, ten months prior to the Missouri court's holding. Defendants removed the action to federal court pursuant to 28 U.S.C. § 1441(a). Defendants now move to dismiss the Complaint on three grounds: (1) that there is no personal jurisdiction over them in New York, (2) that the present action is barred by res judicata by this Court's earlier holding in *Global Discount Travel Servs., LLC v. Trans World Airlines, Inc.,* and (3) that plaintiffs have failed to state a cause of action for tortious interference with prospective economic advantage.

## DISCUSSION

### I. Personal Jurisdiction

Defendants move under Fed. R.Civ.P. 12(b)(2) to dismiss the Complaint against them for lack of personal jurisdiction. A plaintiff bears the ultimate burden of establishing jurisdiction over a defendant by a preponderance of the evidence. *See CutCo Indus., Inc. v. Naughton,* 806 F.2d 361, 365 (2d Cir.1986). However, where, as here, personal jurisdiction is challenged by a Rule 12(b)(2) motion prior to discovery, a plaintiff may defeat the motion " 'by pleading in good faith, *see* Fed. R. Civ. P. 11, legally sufficient allegations of jurisdiction,' i.e., by making a 'prima facie showing' of jurisdiction." *Jazini v. Nissan Motor Co., Ltd.,* 148 F.3d 181, 184, 1998 WL 341021, at *2 (2d Cir. Jun.29, 1998) (quoting *Ball v. Metallurgie Hoboken–Overpelt, S.A.,* 902 F.2d 194, 197 (2d Cir.1990)). In that regard, all pleadings and affidavits must be construed in the light most favorable to the plaintiff. *See PDK Labs, Inc. v.*

*Friedlander,* 103 F.3d 1105, 1108 (2d Cir. 1997).

Personal jurisdiction over a non-domiciliary in a diversity case is determined according to the laws of the state in which the court sits, in this instance, §§ 301 and 302(a) of the New York Civil Practice Law and Rules. *See PDK Labs,* 103 F.3d at 1108. Under New York's general jurisdiction statute, § 301, personal jurisdiction is proper if the defendant is "doing business" in New York so as to establish a presence in the State. The defendant must be doing business "not occasionally or casually, but with a fair measure of permanence and continuity." *Landoil Resources Corp. v. Alexander & Alexander Servs., Inc.,* 77 N.Y.2d 28, 33–34, 563 N.Y.S.2d 739, 741, 565 N.E.2d 488, 490 (1990) (quoting *Tauza v. Susquehanna Coal Co.,* 220 N.Y. 259, 267, 115 N.E. 915, 917 (1917)).

If jurisdiction cannot be obtained under the general jurisdiction statute, it may nevertheless be found pursuant to New York's long-arm statute, § 302(a), which permits specific jurisdiction over a defendant when the plaintiff's claim relates directly to the defendant's New York contacts, however limited. *See Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414, 104 S.Ct. 1868, 1872, 80 L.Ed.2d 404 (1984) (specific jurisdiction is proper "[w]hen a controversy is related to or 'arises out of a defendant's contacts with the forum' ") (quoting *Shaffer v. Heitner,* 433 U.S. 186, 204, 97 S.Ct. 2569, 2579–80, 53 L.Ed.2d 683 (1977)). Section 302(a) provides that "a court may exercise personal jurisdiction over any non-domiciliary ... who in person or through an agent:

1. transacts any business within the state or contracts anywhere to supply goods or services in the state; or

2. commits a tortious act within the state (except defamation); or

3. commits a tortious act without the state causing injury within the state (except defamation), if he

 (i) regularly does or solicits business, or engages in any other persistent course

---

1. At the time I ruled on TWA's motion to dismiss, Global had not yet asserted its counterclaims against TWA in the Missouri action. In dismissing the Complaint, I noted that Global could

bring its breach of contract claim against TWA in that alternative forum. *Id.* at 709. Global did so shortly thereafter.

of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or

(ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce."

CPLR § 302(a).

■ Finally, if the court finds jurisdiction under either § 301 or § 302(a), it must next determine whether such an exercise of jurisdiction comports with due process. *See Metropolitan Life Ins. Co. v. Robertson–Ceco Corp.*, 84 F.3d 560, 567 (2d Cir.1996). Due process requires that a defendant have "minimum contacts" with the forum state such that the maintenance of the action does not offend "traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463, 61 S.Ct. 339, 343, 85 L.Ed. 278 (1940)). The defendant's activity in the state should be such that it would be fair and reasonable to require him to defend himself in that state. *See Kulko v. Superior Court*, 436 U.S. 84, 92, 98 S.Ct. 1690, 1696–97, 56 L.Ed.2d 132 (1978).

■ Here, plaintiffs do not contend that defendants personally engaged in any business in New York sufficient to confer jurisdiction over them in their individual capacities. Indeed, there appears to be no basis for such a contention.[2] However, plaintiffs maintain that this Court nevertheless has jurisdiction over the six defendants, under both § 301 and § 302(a), on a theory of agency. Invoking the New York Court of Appeals' decision in *Kreutter v. McFadden Oil Corp.*, 71 N.Y.2d 460, 527 N.Y.S.2d 195, 522 N.E.2d 40 (1988), plaintiffs contend that, because New York courts unquestionably

have jurisdiction over TWA, jurisdiction can be imputed to defendants because TWA acted as defendants' agent in coercing and threatening the New York travel agencies.[3]

In *Kreutter*, the Court of Appeals held that an out-of-state corporate officer who has not personally transacted business in New York, can still be subject to personal jurisdiction under § 302(a)(1) of New York's long-arm statute, if it can be shown that the corporation transacted business in New York as the officer's agent. 71 N.Y.2d at 467, 527 N.Y.S.2d at 199, 522 N.E.2d at 44. *See Retail Software Services, Inc. v. Lashlee*, 854 F.2d 18, 22 (2d Cir.1988) ("*Kreutter* thus resolves the issue of whether a corporation can act as an agent for an individual for the purposes of § 302(a)(1)."). To establish that a corporation acted as its officers' agent, *Kreutter* provided that:

> [a] [p]laintiff need not establish a formal agency relationship between defendants and [the corporation].... He need only convince the court that [the corporation] engaged in purposeful activities in this State in relation to [plaintiff's] transaction for the benefit of and with the knowledge and consent of the [ ] defendants and that they exercised some control over [the corporation] in the matter.

*Id.* 71 N.Y.2d at 467, 527 N.Y.S.2d at 199, 522 N.E.2d at 44. At the heart of this inquiry is whether the out-of-state corporate officers were "primary actor[s] in the transaction in New York" that gave rise to the litigation, and not merely "some corporate employee[s] ... who played no part in" it. *Retail Software*, 854 F.2d at 22 (quoting *Kreutter*, 71 N.Y.2d at 470, 527 N.Y.S.2d at 201, 522 N.E.2d at 45). *See also Champion Motor Group, Inc. v. Visone Corvette of Mass.*, 992 F.Supp. 203, 206 (E.D.N.Y.1998) ("Before a defendant corporation may be found to be

---

**2.** Defendants' affidavits indicate that none of the defendants resides or works in New York. Gitner resides in New Jersey. Magurno, Compton, Brandt, and Palumbo reside in Missouri. Kennedy resides in Ireland, and has not yet been served. Furthermore, with the exception of Gitner, who maintains a New York bank account, none of the defendants derives revenue from New York outside the context of his employment at TWA.

**3.** It is undisputed TWA is subject to personal jurisdiction in New York. TWA maintains a major hub at New York's JFK Airport and has landing slots at LaGuardia Airport. TWA also sells tickets in New York, flies passengers into and out of New York everyday, and advertises in New York.

acting as the agent of a corporate officer, courts require that the officer be a 'primary actor' in the transaction carried out by the corporation.") (citation omitted).[4]

Here, plaintiffs allege that TWA wrongfully coerced New York travel agencies into refusing to do business with Global, by making a variety of threats. (*See* Complaint ¶ 21.) These allegations, which relate directly to plaintiffs' tortious interference claim, are sufficient to show that TWA engaged "in purposeful activities" in New York relating to this litigation.

However, plaintiffs have not satisfied the "control" prong of the agency test, which requires plaintiffs to show that defendants "exercised some control" over the tortious actions allegedly committed in New York by TWA personnel. To make a prima facie showing of "control," a plaintiff's allegations must sufficiently detail the defendant's conduct so as to persuade a court that the defendant was a "primary actor" in the specific matter in question; control cannot be shown based merely upon a defendant's title or position within the corporation, or upon conclusory allegations that the defendant controls the corporation. *See Pilates, Inc. v. Current Concepts*, 1996 WL 599654, at *3 (S.D.N.Y. Oct.18, 1996) ("[A] general allegation that an officer controls a corporation is not sufficient to establish personal jurisdiction."); *Kinetic Instruments v. Lares*, 802 F.Supp. 976, 984–85 (S.D.N.Y.1992) ("[t]he fact that [the defendant] is the President and majority shareholder of [the corporation] does not necessarily mean that the corporation will be considered his agent"); *Ontel Prods., Inc. v. Project Strategies Corp.*, 899 F.Supp. 1144, 1148 (S.D.N.Y.1995) ("[plaintiff] cannot obtain personal jurisdiction over [defendant] based solely on his position as President of P.S.C.; instead, [plaintiff] must show that [defendant] personally took part in the activities giving rise to the action at issue."). *See also Briley v. Blackford*, 1990 WL 124341, at *7 (S.D.N.Y. Aug.21, 1990) ("The key to agency for jurisdiction purposes is that the individuals outside the jurisdiction must have sufficient contact with and control over the agent's acts within the jurisdiction so that the activity within the jurisdiction can fairly be imputed to those outside.")

Courts have also routinely granted 12(b)(2) motions for lack of personal jurisdiction where the plaintiff made only broadly worded and vague allegations about a defendant's participation in the specific matter at hand. *See Sterling Interiors Group, Inc. v. Haworth, Inc.*, 1996 WL 426379, at * 15 (S.D.N.Y. July 30, 1996) (allegations that defendant "participated directly" in illegal scheme was "far too vague" to establish jurisdiction; plaintiffs failed to allege "even minor detail" regarding the specific actions taken by the defendant); *Briley v. Blackford*, 1990 WL 124341, at * 8 (S.D.N.Y. Aug.21, 1990) (vague allegations that defendants cooperated in tortious conduct was insufficient to establish control element); *Pilates, Inc. v. Current Concepts*, 1996 WL 599654, at *3 (S.D.N.Y. Oct.18, 1996) (vague allegation that defendant controlled the corporation, without any description of defendant's role in tortious conduct, was insufficient to make prima facie showing of personal jurisdiction).[5]

Similarly, in the case at bar, the Complaint only generally alleges that "defendants directed TWA personnel to seek out and

---

**4.** Plaintiffs assert that, by applying *Kreutter*'s agency test, jurisdiction can be imputed from TWA to defendants under both § 301 and § 302(a). However, *Kreutter* was decided only in the context of § 302(a); it did not address whether a theory of agency could similarly be the basis for jurisdiction under § 301. Since *Kreutter*'s holding, several courts have addressed whether *Kreutter* should apply to § 301, but the question remains unsettled. *See Kinetic Instruments, Inc. v. Lares*, 802 F.Supp. 976, 984 n. 5 (S.D.N.Y. 1992) (noting, without deciding the question, that *Kreutter*'s application to § 301 "is not clear"); *Keramchemie GmbH v. Keramchemie (Canada) Ltd.*, 771 F.Supp. 618, 622–23 (S.D.N.Y.1991) (applying *Kreutter*'s agency test to § 301, but acknowledging that *Kreutter* was decided in context of § 302). It is not necessary for this Court to reach this issue, however, because in either case, I find that plaintiffs have not established agency.

**5.** In an analogous case, the Second Circuit recently held that conclusory statements, without any supporting facts, "d[id] not constitute a prima facie showing of agency" between a foreign car manufacturer and its United States subsidiary. *See Jazini v. Nissan Motor Co., Ltd.*, 148 F.3d 181, 184, 1998 WL 341021, at * 2 (2d Cir. June 29, 1998).

wrongfully ... punish travel agencies doing business with Global," and that TWA personnel thereafter wrongfully coerced travel agencies in New York and elsewhere "at the direction of defendants." (Complaint ¶¶ 18, 20.) The Complaint is completely devoid of any factual specificity indicating how each of the six defendants participated in the allegedly tortious conduct or what role they each played. Nor can this Court ignore that virtually all of plaintiffs' allegations against the six defendants were grafted, word-for-word, from plaintiffs' prior complaints against TWA. As alleged, this Court thus has no basis for knowing whether the six named defendants actually orchestrated the allegedly tortious conduct, or were named in the Complaint simply because their names appear at the top of TWA's masthead.

Plaintiffs try to save their Complaint by contending that information about defendants' participation in the underlying conduct is "peculiarly within the knowledge of the defendants" (Complaint ¶ 18), and that plaintiffs, therefore, are entitled to take discovery of defendants before a 12(b)(2) motion can be considered. But if that were the case, then a plaintiff could randomly sue any out-of-state corporate employee in New York and subject that individual to depositions and discovery in the hope that, even if the named defendant turned out not to be involved in the relevant conduct, he or she could point to other corporate employees who were. That is not what *Kreutter* intended. Not only would it be terribly unfair to hail out-of-state corporate officers into a New York court without any good faith basis for doing so, it would also raise grave due process concerns. *See Kulko v. Superior Court, supra,* 436 U.S. at 92, 98 S.Ct. at 1696–97 ("an essential criterion [for exercising personal jurisdiction] in all cases is whether the 'quality and nature' of the defendant's activity is such that it is 'reasonable' and 'fair' to require him to conduct his defense in that State") (quoting *International Shoe Co., supra,* 326 U.S. at 316–17, 66 S.Ct. at 158–59). *Accord Ontel,* 899 F.Supp. at 1149 ("It is not enough that [defendant], as President of P.S.C., likely possessed authority to direct all the activities that gave rise to this suit. If that were the case, the President of every company would be subject to

jurisdiction in New York based on activities with which he or she had no personal involvement and over which he or she exercised no decisionmaking authority.")

Significantly, this is not a case in which plaintiffs had no other options for legally proceeding. To the contrary, plaintiffs had, and may still have available to them, ample other avenues for discovering who at TWA, if anyone, tortiously interfered with plaintiffs' business relationships with travel agencies. For instance, plaintiffs could have questioned the travel agencies directly to learn which TWA personnel threatened them. Plaintiffs could then have sued those TWA personnel and found out who, higher up in TWA's reporting chain, directed their actions. Or, plaintiffs could have properly obtained jurisdiction over the six officers named here by suing them in the jurisdictions in which they reside. Plaintiffs might also have sued TWA directly on grounds of tortious interference and added individual defendants to the lawsuit once discovery revealed who the "primary actors" were.

However, what plaintiffs did in the instant case was improper. Suing the out-of-state officers of a large, multi-national corporation based only upon their title, and absent any good faith basis for believing that they personally participated in the conduct underlying plaintiffs' lawsuit, will not confer jurisdiction under a theory of agency. In contrast, where New York courts have found jurisdiction under an agency theory, the plaintiff's allegations, taken as true, made it readily apparent that the out-of-state corporate officer had been a driving force behind the corporation's allegedly wrongful actions. *See Retail Software Services, Inc. v. Lashlee,* 854 F.2d 18 (2d Cir.1988) (agency established where out-of-state president and vice president were alleged to have made oral misrepresentations and sent misleading financial statements to plaintiffs during corporation's advertising campaign in New York); *Nelson A. Taylor Co., Inc. v. Technology Dynamics Group Inc.,* 1997 WL 176325, at * 5 (N.D.N.Y. Apr.7, 1997) (agency established where defendants were alleged to have negotiated and signed the agreements in dispute, personally controlled all transactions dealing

with plaintiffs, and authored virtually all correspondence to plaintiffs concerning the transactions in question); *Basquiat v. Kemper Snowboards,* 1997 WL 527891, at \*3 (S.D.N.Y. Aug.25 1997) (exercising jurisdiction over corporate vice president who never personally conducted business in New York, but who was alleged to be the employee in charge of the corporation's effort to distribute infringing snowboards in New York); *Champion Motor Group v. Visone Corvette,* 992 F.Supp. 203, 206 (E.D.N.Y.1998) (agency established based upon allegations of defendant's personal involvement in negotiating and commencing sales agreement at issue); *Kinetic Instruments,* 802 F.Supp. at 984–85 (agency established over corporate president based upon allegations that he was involved in day-to-day business operations of the corporation, including the manufacture and sale of the accused product.)

For the foregoing reasons, I find that plaintiffs have not made a prima facie showing of personal jurisdiction over any of the six defendants named in this action.[6] Because I dismiss the Complaint against all defendants on this basis, I need not reach defendants' arguments for dismissal on grounds of res judicata and failure to state a claim.

## CONCLUSION

For the reasons discussed, the Court grants defendants' motion to dismiss the Complaint. The Clerk of the Court is hereby directed to enter judgment dismissing the Complaint in its entirety.

**SO ORDERED.**

---

**6.** The same considerations which lead this Court to conclude that the plaintiffs have not satisfied the "control" prong of *Kreutter,* indicate that plaintiffs also have not satisfied the "knowledge" and "consent" prongs of the agency test. Furthermore, whether or not the defendants, in their capacity as officers and minor shareholders of TWA, can be said to have benefitted from TWA's conduct in New York is a close question. *See Retail Software Services, Inc.,* 854 F.2d at 23 (presuming that "officers, directors, and shareholders ... st[and] to benefit from [their corporation's] entry into the New York market"). *But see Siegel v. Holson Co.,* 768 F.Supp. 444, 446 (S.D.N.Y.1991) (no jurisdiction over corporation's president where he "did not stand to personally benefit from the actions he took on behalf of [the corporation]"); *Ivy Mar Co. v. C.R. Seasons Ltd.,* 1997 WL 37082, at \* 6 (E.D.N.Y. Jan. 24, 1997) (dismissing claims against general manager and partial owner of corporation where plaintiff failed to allege that wrongful conduct was for the defendants' "personal benefit"). Cases finding the benefit prong of *Kreutter* to be satisfied typically have involved claims against the controlling shareholders of closely held corporations, which is not the case here. *See, e.g., Nelson A. Taylor Co. v. Technology Dynamics Group Inc.,* 1997 WL 176325, at \*5 (N.D.N.Y. Apr.7, 1997) (finding personal jurisdiction over two defendants who, together, owned 61.5% of corporation's stock); *Sterling Interiors Group, Inc. v. Haworth, Inc.,* 1996 WL 426379 (S.D.N.Y. Jul.30, 1996) (finding jurisdiction over "principal shareholder," but not over defendants who were not shareholders). However, the Court need not decide this question because plaintiffs' failure to satisfy other prongs of the *Kreutter* test is dispositive of the agency issue.