| |
|---|
| **People v Vintage Travel Servs., Inc.** |
| 2025 NY Slip Op 31686(U) |
| May 8, 2025 |
| Supreme Court, New York County |
| Docket Number: Index No. 452307/2023 |
| Judge: Shahabuddeen Ally |
| Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service. |
| This opinion is uncorrected and not selected for official publication. |

# SUPREME COURT OF THE STATE OF NEW YORK
# NEW YORK COUNTY

PRESENT:    **HON. SHAHABUDDEEN A. ALLY**
*Justice*
PART 16

---

THE PEOPLE OF THE STATE OF NEW YORK,
by LETITIA JAMES, Attorney General of the State
of New York,

Petitioner,

-against-

VANTAGE TRAVEL SERVICES, INC. and HENRY R.
LEWIS, individually and as an officer of VANTAGE
TRAVEL SERVICES, INC.,

Respondents.

| | |
|---|---|
| INDEX NO. | 452307/2023 |
| MOTION DATE | 11/27/2023 & 12/11/2023 |
| MOTION SEQ. NOS. | 002 |

## DECISION & ORDER

---

The following e-filed documents, listed by NYSCEF document number, were read
on this motion (Seq. No. 2) to/for **DISMISS**: 1, 4-56, 62-66, 68-70, 85-87

---

Petitioner THE PEOPLE OF THE STATE OF NEW YORK (the "People"), by LETITIA
JAMES, Attorney General of the State of New York (the "NYAG"), commenced this special pro-
ceeding against respondents VANTAGE TRAVEL SERVICES, INC. ("Vantage") and HENRY R.
LEWIS ("Lewis"; and, together with Vantage, "Respondents"), individually and as an officer of
Vantage, by Verified Petition and Notice of Petition filed on September 12, 2023. (Verified Pet.,
dated Sept. 12, 2023 ("Pet.") (NYSCEF Doc. 1); Notice of Pet., dated Sept. 12, 2023 ("NOP")
(NYSCEF Doc. 2)) The People seek, pursuant to Executive Law § 63(12) and General Business Law
("GBL") § 349, injunctive relief, restitution, disgorgement, civil penalties, and other remedies
against Respondents for their alleged failure to pay refunds for travel that they arranged for New
York customers but failed to provide.

Prior to the commencement of this proceeding, on June 29, 2023, Vantage filed a Chapter
11 Bankruptcy Petition in the U.S. Bankruptcy Court for the District of Massachusetts (the "Bank-
ruptcy Court"), captioned *In re Vantage Travel Service, Inc.*, Case No. 23-11060-JEB. On November
20, 2023, the Bankruptcy Court issued an order, pursuant to 11 U.S.C. § 362(b)(4), staying the
NYAG from seeking restitution or disgorgement from Vantage in this proceeding but otherwise

[* 1]

expressly permitting the NYAG to seek injunctive relief and civil penalties. (Stipulated Order for Permanent Inj., Monetary J., & Other Relief, dated July 25, 2024 (NYSCEF Doc. 84), ¶ 4) The People and Vantage subsequently resolved this proceeding as to Vantage, and the Court entered a Stipulated Order for Permanent Injunction, Monetary Judgment, and Other Relief on July 25, 2024. (*Id.*)

This proceeding remains, therefore, pending against Lewis *only*. On November 20, 2023, Lewis moved (Seq. No. 2) to dismiss the Verified Petition for lack of personal jurisdiction. (Notice of Mot., dated Nov. 20, 2023 (NYSCEF Doc. 62)) The People filed opposition on December 7, 2023. (*See* NYSCEF Docs. 68-70)

On January 8, 2024, Lewis and nonparties Argus Management Corporation ("Argus"), in its capacity as the plan administrator under Vantage's Liquidating Plan dated October 3, 2023, and Stephen Gray ("Gray"), in his capacity as the creditor trustee under the Liquidating Plan, commenced an adversary proceeding against the NYAG[1] in the Bankruptcy Court seeking to enjoin any further proceedings herein (the "Adversary Proceeding") and, simultaneously therewith, filed a motion for a preliminary injunction. (Letter from Melvin L. Goldberg, Assistant Att'y Gen., to Hon. Shahabuddeen A. Ally 2 (Nov. 15, 2024) ("Goldberg Letter") (NYSCEF Doc. 85)) The NYAG subsequently filed a motion seeking to dismiss Lewis from the Adversary Proceeding. (*Id.*) On August 29, 2024, the Bankruptcy Court denied Lewis's, Argus's, and Gray's motion for a preliminary injunction and granted the NYAG's motion to dismiss Lewis. (*Id.*; *id.*, Ex. 1 (NYSCEF Doc. 86))

Lewis has appealed both of the Bankruptcy Court's rulings in the Adversary Proceeding to the U.S. Bankruptcy Appellate Panel of the U.S. Court of Appeals for the First Circuit. (Goldberg Letter at 2) Upon the Court's inquiry, counsel for the parties confirmed that, as of March 20, 2025, Lewis's appeal had been fully briefed and is awaiting oral argument and decision. Counsel also confirmed that there currently is no order in place from the Bankruptcy Court staying decision in this proceeding.

---

[1] The Adversary Proceeding was also filed against the Attorney General of the Commonwealth of Pennsylvania, who had also brought suit against Vantage and Lewis based on similar allegations of fraud and deceptive practices. (*See* Goldberg Letter at 2)

452307/2023 The People of the State of New York v. Vantage Travel Services, Inc. et al.     Page 2 of 9
Mot. Seq. Nos. 001 & 002

[* 2]

Accordingly, the Court elects to proceed with decision on Lewis's motion to dismiss. For the reasons discussed below, the motion is **DENIED with leave to renew as set forth herein.**

## I.    BACKGROUND

Vantage, a Massachusetts corporation with its principal place of business there, was in the business of organizing and selling ocean and river cruises around the world as well as land tours in Africa, Asia, and North and South America. (Pet. ¶¶ 4, 8-9; Aff. of Henry Roland Lewis in Supp. of the Def.'s Mot. to Dismiss, sworn to on Nov. 17, 2023 ("Lewis Aff.") (NYSCEF Doc. 65), ¶¶ 4-6) Vantage offered these trips to New York consumers through its website (www.vantravel.com) and direct mail advertisements. (Pet. ¶ 8)

The People allege that Vantage's handling of cancellations and refunds for the trips that it sold to consumers during at least the three years preceding the commencement of this proceeding constituted fraud and deceptive practices within the meaning of Executive Law § 63(12) and GBL § 349. (*Id.* ¶¶ 22, 37-45) Specifically, the People allege that New York consumers often either had to wait for more than a year to receive refunds (often in amounts in excess of $10,000) for trips that they had to cancel for health reasons or that Vantage itself "postponed" or cancelled, or otherwise *never* received a refund for cancelled or "postponed" trips. (*See id.* ¶¶ 10-19) As to Vantage's alleged "postponement" of trips, Vantage would, according to the People, often postpone trips for more than a year or multiple times and then claim that the trips were not cancelled to deny consumers requested refunds, offering them travel credits instead. (*See id.* ¶¶ 12-13) Even if Vantage admitted to cancelling a trip, rather than merely "postponing" it, Vantage allegedly delayed making refunds for a year or more. (*Id.* ¶ 16) In response to subpoenas served by the NYAG, Vantage allegedly concedes to owing "refunds to scores of New York consumers, in many cases amounting to thousands of dollars per consumer," both in cases of Vantage-cancelled or -"postponed" trips as well as trips cancelled by consumers for health reasons. (*Id.* ¶¶ 14, 19) Vantage's handling of cancellations and refunds allegedly violated its own Tour Participation Agreements and led to hundreds of consumer complaints being filed against Vantage with the Better Business Bureau (the "BBB") and the NYAG, causing the BBB to revoke Vantage's BBB Accreditation. (*See id.* ¶¶ 21-29)

The People allege that Lewis had knowledge of and participated in Vantage's fraudulent and deceptive practices and is therefore liable for them. (*Id.* ¶ 30) Lewis, who resides in Florida,

was the founder and sole owner of Vantage and was its CEO, CFO, Treasurer, Secretary, and sole Board member. (*Id.* ¶ 6; Affirm. of Melvin L. Goldberg in Opp. to Resp't Lewis' Mot. to Dismiss, dated Dec. 7, 2023 ("Goldberg 12/7/23 Affirm.") (NYSCEF Doc. 69), ¶ 16; Goldberg 12/7/23 Affirm., Ex. 1 (NYSCEF Doc. 70); Lewis Aff. ¶¶ 3-4, 7, 19) Between March 2020 and July 2021, consumers received email communications signed by Lewis as founder and chairman concerning postponement of trips due to the COVID-19 pandemic. (*Id.* ¶¶ 31-32; Affirm. of Melvin L. Goldberg in Supp. of the Verified Pet., dated Sept. 12, 2023 ("Goldberg 9/12/23 Affirm.") (NYSCEF Doc. 56), Ex. 10 (NYSCEF Doc. 51)) These communications did not provide a date by which the "postponed" trips would be rescheduled, did not offer consumers the ability to receive a refund, and, in most cases, mentioned the high call volume to Vantage's customer-service line resulting in unusually long wait times. (Pet. ¶¶ 33-34) In separate email communications to consumers who cancelled their trips due to COVID-19 in March and April 2020, Lewis repeatedly mentioned a "risk-free cancellation policy" for future trips and offered credits or other incentives for consumers to book new trips. (*Id.* ¶ 35)

On June 29, 2023, Lewis submitted to the Bankruptcy Court a Consent of the Sole Director (the "Consent") to a number of resolutions for the Bankruptcy Court's review and approval. (Pet. ¶ 36; Goldberg 12/7/23 Affirm., Ex. 12 (NYSCEF 53)) The document expressly represented that Lewis was Vantage's sole director, and Lewis signed it in that capacity. (Goldberg 12/7/23 Affirm., Ex. 12) Vantage was subsequently sold to Pacific Travel Partners, a subsidiary of Aurora Expeditions, on August 18, 2023. (Pet. ¶ 8)

## II.    DISCUSSION

Lewis argues that he is not subject to personal jurisdiction under New York's long-arm statute, CPLR § 302(a), and that the exercise of personal jurisdiction would be contrary to the Constitution's guarantee of due process. There is no real dispute here that Lewis is not subject to jurisdiction in the courts of this State as a result of actions taken purely in his personal capacity; rather, the People's position is that jurisdiction extends to Lewis based on Vantage's conduct of business in New York and Lewis's control over Vantage and knowledge of and participation in the offending conduct.

CPLR § 302(a)(1) provides that "a court may exercise personal jurisdiction over any non-domiciliary . . . who in person or through an agent: 1. transacts any business within the state or

contracts anywhere to supply goods or services in the state." "Typically, 'proof of one transaction in New York is sufficient to invoke jurisdiction [under Section 302(a)(1)], even though the defendant never enters New York, so long as the defendant's activities here were purposeful and there is a substantial relationship between the transaction and the claim asserted.'" *Deutsche Bank Sec., Inc. v. Mont. Bd. of Invs.*, 7 N.Y.3d 65, 71 (2006) (quoting *Kreutter v. McFadden Oil Corp.*, 71 N.Y.2d 460, 467 (1988)). Again, there does not appear to be any real dispute that Vantage itself is subject to this Court's jurisdiction under the long-arm statute. The Court is, in any event, satisfied, based on the evidence presented by the People, that Vantage purposefully conducted approximately $10 million worth of business in New York and that the People's claims against Vantage arise directly from that business.

Significantly, CPLR § 302(a) "also confers jurisdiction over individual corporate officers who supervise and control an infringing activity." *Chloe v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 164 (2d Cir. 2010) (citing *Kreutter*, 71 N.Y2d at 467-73). The parties agree that the Court's analysis of whether Lewis is subject to jurisdiction in New York by way of Vantage's conduct of business in the State should be governed by *Kreutter*. In *Kreutter*, the New York Court of Appeals rejected attempts to use the "fiduciary shield doctrine" to defeat the exercise of jurisdiction under CPLR § 302(a) over an individual acting solely in his corporate capacity. 71 N.Y.2d at 467-73. The Court of Appeals held that long-arm jurisdiction could be maintained over such an individual if the corporation engaged in "purposeful activities" in New York "for the benefit and with the knowledge and consent of" the individual and the individual exercised "some control" over the corporation. *Id.* at 467. A "formal agency relationship" between the corporation and individual is not necessary. *Id.*

"At the heart of th[e] inquiry" required under *Kreutter* "is whether the out-of-state corporate officers were 'primary actor[s] in the transaction in New York' that gave rise to the litigation, and not merely 'some corporate employee[s] . . . who played no part in'" it. *Karabu v. Gitner*, 16 F. Supp. 2d 319, 323 (S.D.N.Y. 1998) (Sotomayor, J.) (quoting *Retail Software Servs., Inc. v. Lashlee*, 854 F.2d 18, 22 (2d Cir. 1988)). Considering the "control" prong of the *Kreutter* test, the *Karabu* court held that, "[t]o make a prima facie showing of 'control,' a plaintiff's allegations must sufficiently detail the defendant's conduct so as to persuade a court that the defendant was a 'primary actor' in the specific matter in question." *Id.* at 324. "[C]ontrol," the court held, "cannot be shown based

452307/2023 The People of the State of New York v. Vantage Travel Services, Inc. et al.          Page 5 of 9
Mot. Seq. Nos. 001 & 002

5 of 9

merely upon a defendant's title or position within the corporation, or upon conclusory allegations that the defendant controls the corporation." *Id.* (collecting cases).

Lewis's involvement in Vantage's allegedly fraudulent and deceptive transactions and practices in New York is the key dispute here. As Lewis argues, based on *Karabu* and the cases on which it relies, the People's mere allegations that Lewis was the founder and sole owner of Vantage; was its CEO, CFO, Treasurer, Secretary, and sole Board member during the relevant period; submitted the Consent as Vantage's sole director; and had knowledge of and participated in the deceptive practices are not alone sufficient to demonstrate, *prima facie*, that Lewis was a "primary actor" in the practices. These allegations are insufficient to establish control under *Kreutter* because they are not of any specific conduct by Lewis directly involving himself in, actively overseeing, or having knowledge of and tacitly acquiescing to the offending conduct and are otherwise conclusory.

But those are not the People's only allegations. They also allege, and provide copies of, email communications signed by Lewis as Vantage's founder and chairman that were sent to consumers concerning Vantage's delays to travel plans and representing to consumers who cancelled their trips the existence of a risk-free cancellation policy. To the extent that the People alleged that these communications were false or deceptive, because the delays were de facto cancellations and Vantage never intended to provide refunds (promptly or at all) for cancellations, these communications would, all other considerations aside, sufficiently demonstrate Lewis's *prima facie* involvement in the transactions forming the basis for the People's claims in this proceeding. *See Branham v. ISI Alarms, Inc.*, No. 12-CV-1012 (ARR) (MDG), 2013 WL 471588, at *7-8 (E.D.N.Y. Aug. 30, 2013).

In his affidavit submitted in support of the motion, however, Lewis disclaims all knowledge of Vantage's operations, any participation in communications with consumers, and any participation in the implementation of Vantage's postponement, cancellation, and refund policies during the relevant period. Specifically, Lewis claims that he "stopped being involved with the day-to-day management of Vantage" in 2019 due to unspecified health issues. (Lewis Aff. ¶ 12) Since that time, according to Lewis, "other senior officers, including the Chief Operating Officer and Chief Financial Officer," allegedly "have made all decisions, or delegated all decision-making authority, regarding day-to-day operations of Vantage." (*Id.* ¶ 13) Lewis further avers

[* 6]

that, "[s]ince at least 2019, [he] ha[s] not written or ordered the drafting, writing, or sending of any communications regarding Vantage's policies to customers" and "ha[s] not overseen or been aware of any marketing or email campaigns for Vantage." (*Id.* ¶¶ 14-15) Moreover, Lewis avers that he did not "draft, write, or send—or direct the drafting, writing, or sending—of any" of the specific emails on which the People rely. (*Id.* ¶ 16) According to Lewis, "[i]t was common practice for the marketing or customer service teams at Vantage to append [Lewis's] name and signature to the end of communications with customers or potential customers, regardless of whether I see, direct, know about, or approve of the communication." (*Id.* ¶ 17) Based on this testimony, Lewis argues that he did not have the control necessary under *Kreutter* to be subject to jurisdiction in New York.

In opposition, the People observe that Lewis fails to expressly state in his affidavit that he had no *knowledge* of the email communications on which the People rely and did not receive and approve them. But that seems to be the implication of Lewis's averments, and the Court is unconvinced that it should exercise long-arm jurisdiction over Lewis based solely on such a technical reading of Lewis's affidavit.

Yet, Lewis appears to make a crucial admission in his testimony. Again, Lewis avers that, since 2019, "other senior officers, including the Chief Operating Officer *and Chief Financial Officer*, have made all decisions, or delegated all decision-making authority, regarding day-to-day operations of Vantage." (*Id.* ¶ 13 (emphasis added)) The People, however, submit copies of Annual Reports for the years 2018 through 2021 that Lewis signed and filed with the Massachusetts Secretary of State in which he represents that he was Vantage's Chief Financial Officer during each of those years. (Goldberg 12/7/23 Affirm., ¶ 16; *id.*, Ex. 1) In light of his representations in these legal filings, Lewis seems to concede in his testimony that *he* was in fact one of the individuals making all decisions on Vantage's behalf even after 2019, when he allegedly relinquished any role in the day-to-day management of Vantage, and at least through 2021. Of course, such a concession would dramatically contradict the apparent purpose of Lewis's affidavit: to disclaim any role in Vantage's day-to-day management post-2019. The Court is not convinced that this was Lewis's intent, however, and Lewis has not submitted anything in reply shedding clarifying light on the issue.

452307/2023 The People of the State of New York v. Vantage Travel Services, Inc. et al.
Mot. Seq. Nos. 001 & 002

Page 7 of 9

[* 7]

7 of 9

The People request that, should the Court find that the People have not demonstrated *prima facie* jurisdiction over Lewis but have demonstrate that facts supporting jurisdiction may exist, the Court permit the People to conduct limited jurisdictional discovery. *Peterson v. Spartan Indus.*, 33 N.Y.2d 463, 467 (1974). The Court agrees, based on the Lewis's sole ownership of and numerous officer positions with Vantage, Lewis's signature on the email communications submitted by the People, as well as the above issues arising from Lewis's affidavit, that jurisdictional discovery is justified and necessary here to resolve the disputed issue of Lewis's involvement in and/or knowledge of Vantage's practices with regard to postponements, cancellations, and refunds and any relevant transactions and communications with New York consumers. Accordingly, Lewis's motion to dismiss is denied with leave to renew upon completion of such discovery.

The Court has considered the additional contentions of the parties not specifically addressed herein. To the extent that any relief requested by the parties was not addressed by the Court, it is hereby denied.

Accordingly, it is hereby:

**ORDERED** that Lewis's motion to dismiss (Seq. No. 2) is **DENIED with leave to renew as set forth below**; and it is further

**ORDERED** that the People shall serve Lewis with a demand for the production of documents relevant to the jurisdictional inquiry **within 14 days** of the entry of this Decisions and Order; and it is further

**ORDERED** that Lewis shall respond to and produce any documents responsive to the People's demand **within 30 days** of its service; and it is further

**ORDERED** that Lewis shall make himself available for, and the People shall conduct, a deposition of Lewis concerning any matters relevant to the jurisdictional inquiry **within 30 days** of Lewis's production of documents responsive to the People's demand, and such deposition may be conducted virtually if the parties so agree; and it is further

**ORDERED** that Lewis may renew his motion to dismiss **within 14 days** after the completion of his deposition, **otherwise said motion is deemed waived**; and it is further

[* 8]

**ORDERED** that no alterations may be made to the forgoing discovery schedule except by Court order upon letter motion; and it is further

**ORDERED** that the People's Petition and Notice of Petition (Seq. No. 1) shall be held in abeyance until the expiration of Lewis's time to renew his motion to dismiss, and the Clerk shall remove Motion Sequence 1 from the Court's calendar until such time; and it is further

**ORDERED** that the People shall serve a copy of this Decision and Order upon Lewis and upon the Clerk of the General Clerk's Office with notice of entry **within 14 days** of the upload of this Decision and Order to NYSCEF; and it is further

**ORDERED** that service upon the Clerk of the General Clerk's Office shall be made in accordance with the procedures set forth in the Protocol on Courthouse and County Clerk Procedures for Electronically Filed Cases (Revised August 15, 2019);[2] and it is further

**ORDERED** that any requested relief not expressly addressed herein has been considered and is denied; and it is further

**ORDERED** that the Clerk shall mark Motion Sequence No. 2 decided in all court records.

This constitutes the decision and order of the Court.

| May 8, 2025 | | SHAHABUDDEEN A. ALLY, A.J.S.C. |
| DATE | | |

| CHECK ONE: | | CASE DISPOSED | | X | NON-FINAL DISPOSITION | | |
| MOTION (SEQ. 2): | | GRANTED | X | DENIED | | GRANTED IN PART | | OTHER |
| CHECK IF APPROPRIATE: | | SETTLE ORDER | | | | SUBMIT ORDER | | STAY CASE |
| | | INCLUDES TRANSFER/REASSIGN | | | | FIDUCIARY APPOINTMENT | | REFERENCE |

---

[2] The protocols are available at https://www.nycourts.gov/LegacyPDFS/courts/1jd/supctmanh/Efil-protocol.pdf.

452307/2023 The People of the State of New York v. Vantage Travel Services, Inc. et al.            **Page 9 of 9**
Mot. Seq. Nos. 001 & 002

[* 9]