**The REYNOLDS CORP., Plaintiff,**

**v.**

**NATIONAL OPERATOR SERVICES, INC., et al., Defendants.**

**No. 98–CV–6308L.**

United States District Court, W.D. New York.

Sept. 22, 1999.

T. Andrew Brown, Brown and Hutchinson, Rochester, NY, Stephen Sale, Claxton, Sale & Quinn, P.C., Washington, DC, for The Reynolds Corporation, plaintiff.

Daniel J. Moore, Harris, Beach & Wilcox, Rochester, NY, Stephen B. Mercer, Rene Sandler, Sandler & Mercer, P.C., Rockville, MD, for National Operator Services, Inc., Eugene Sandler, Richard Kay, defendants.

## DECISION AND ORDER

LARIMER, Chief Judge.

## I. INTRODUCTION

Plaintiff, the Reynolds Corporation ("Reynolds"), commenced this action against National Operator Services, Inc. ("NOS"), Operator Communications, Inc. ("Operator"), Ronald Haan, Cindy Haan, Eugene Sandler, and Richard Kay. Pending before this Court is defendants Eugene Sander and Richard Kay's (sometimes "the individual defendants") joint motion to dismiss for lack of personal jurisdiction, and defendants NOS and Operator's joint motion to dismiss for improper venue, or in the alternative, to transfer to the District of Maryland.

## II. FACTUAL BACKGROUND

This action arose from a contractual relationship between plaintiff, a New York

corporation with its principal place of business in Rochester, New York, and NOS, a Maryland corporation with its principal place of business in the state of Maryland. Pursuant to the September 1, 1992 agreement, NOS brokered operator assisted long distance services, which Reynolds marketed to owners of pay telephones and hospitality business customers. The actual operator and long distance services were provided by a company called Oncor.[1] Prior to contracting with NOS, Reynolds had contracted directly with Oncor to sell Oncor's services.

The complaint alleges that "NOS and Oncor encouraged Reynolds to substitute the agreement with NOS for Reynolds' direct relationship with Oncor." Amended Complaint, ¶ 16. According to the complaint, NOS agreed to pay Reynolds a commission for all telephones that remained online with NOS. Reynolds also received compensation in the form of a surcharge on long distance calls placed while the telephones were online with NOS. NOS terminated its relationship with Oncor in September of 1995.

It is the termination of that agreement that forms the basis for the complaint. The complaint alleges breach of contract, tortious interference, conversion, unjust enrichment, negligence, and fraud. Plaintiff alleges that it received some compensation under the agreement, but that substantial sums remain due. Plaintiff also alleges that Oncor and NOS settled a dispute between them by agreeing in part that Oncor would no longer make payments to NOS for the purpose of compensating Reynolds under the agreement.

1. According to the complaint, Oncor merged with Operator, a Delaware corporation with its principal place of business in Texas, in May of 1997. Operator, the survivor corporation, assumed all the debts and liabilities of Oncor and hence, is the party named in the complaint.

2. Although NOS has conceded the issue of personal jurisdiction, the Court finds, in the

## III. DISCUSSION

### A. Personal Jurisdiction over NOS, Sandler, and Kay

In its original motion, defendant NOS moved to dismiss on the grounds that the Court lacked personal jurisdiction over it. At oral argument on the motion, counsel for plaintiff and defendant NOS discussed whether a tariff filed with the Federal Communications Commission on behalf of NOS concerning NOS's activities in New York established personal jurisdiction. Subsequent to the argument, in a letter to the Court dated March 1, 1999, NOS conceded that there were grounds for "special jurisdiction" over NOS and withdrew its motion to dismiss for lack of personal jurisdiction.[2] Therefore, the Court need only determine whether Reynolds has established personal jurisdiction over the individual defendants, Sandler and Kay.

Plaintiff bears the burden of proving jurisdiction over defendants by a preponderance of the evidence. *See Marine Midland Bank, N.A. v. Miller*, 664 F.2d 899, 904 (2d Cir.1981). Where, as here, jurisdiction is challenged before discovery, plaintiff may defeat a motion to dismiss by "pleading in good faith ... legally sufficient allegations of jurisdiction." *Jazini v. Nissan Motor Co., Ltd.*, 148 F.3d 181, 184 (2d Cir.1998). Plaintiff must, therefore, make only a prima facie showing of jurisdiction to survive a motion to dismiss. *See Id.*

In a diversity case, jurisdiction is determined according to the law of the state in which the district court sits. *See Jazini*, 148 F.3d at 183–84. In New York, personal jurisdiction is determined by sections 301 and 302(a) of the New York Civil

alternative, that NOS had transacted business in New York, and that an "articulable nexus" existed between that business activity and this cause of action. Therefore, personal jurisdiction would be proper under the New York long-arm statute. *See* N.Y.Civ.Prac. L & R § 302(a)(1); *Credit Lyonnais Securities (USA), Inc. v. Alcantara*, 183 F.3d 151, 153 (2d Cir. 1999).

Practice Law and Rules. Plaintiff contends that this Court has jurisdiction over the individual defendants under the New York long-arm statute, specifically sections 302(a)(1) and 302(a)(3).

Plaintiff has not alleged that Sandler and Kay's personal contacts with the state of New York are sufficient to establish personal jurisdiction here. Instead, plaintiff seeks to establish jurisdiction over Sandler and Kay based on their activities as corporate representatives.

At one time, the Second Circuit interpreted New York's long-arm statute as providing a "fiduciary shield," which protected a corporate employee from being subject to jurisdiction in New York for "acts performed by a person in his capacity as a corporate fiduciary." *Marine Midland Bank*, 664 F.2d at 901. In 1988, the New York Court of Appeals rejected this doctrine, however, and held that the long-arm statute was not "intended to accord any special treatment to fiduciaries acting on behalf of a corporation or to insulate them from long-arm jurisdiction for acts performed in a corporate capacity." *Kreutter v. McFadden Oil Corp.*, 71 N.Y.2d 460, 470, 527 N.Y.S.2d 195, 522 N.E.2d 40 (1988). So, defendants Sandler and Kay's contention here that there can be no personal jurisdiction over them because their acts were done in a representative capacity is foreclosed by *Kreutter*.

■ On the other hand, just because the corporation is subject to jurisdiction does not, *ipso facto*, subject every corporate officer to personal jurisdiction. Something more is required.

Of course, if the officer engages in activities and conduct in New York that satisfies section 302(a)(1), then the officer subjects himself to personal jurisdiction. *Kreutter* established another basis for jurisdiction, however, over individual corporate officers. Applying traditional agency principles, if the corporation engaged in "purposeful activities" in New York in relation to the transaction at issue "for the benefit of and with the knowledge and consent of" the individual defendants, and if the individual defendants exercised "some control" over the corporation, then personal jurisdiction over the individual defendants exists. *See Kreutter*, 71 N.Y.2d at 467, 527 N.Y.S.2d 195, 522 N.E.2d 40.

■ Soon after *Kreutter* was decided, the Second Circuit relied on it and concluded that personal jurisdiction was established over several individual corporate officers where the test enunciated by Kruetter was met. *See Retail Software Services, Inc. v. Lashlee*, 854 F.2d 18, 22 (2d Cir.1988). Just as the actions of a corporate agent may be sufficient to confer jurisdiction on the corporation, "a corporation can act as an agent for an individual for the purposes of § 302(a)(1)." *Retail Software Services, Inc.*, 854 F.2d at 22. Other federal courts in New York have utilized the same agency rationale to find personal jurisdiction over individual defendants. *See, e.g. Champion Motor Group, Inc. v. Visone Corvette of Massachusetts, Inc.*, 992 F.Supp. 203, 206, 207 (E.D.N.Y. 1998); *Basquiat v. Kemper Snowboards*, 1997 WL 527891, at *2–3 (S.D.N.Y. Aug.25, 1997); *Kinetic Instruments, Inc. v. Lares*, 802 F.Supp. 976, 984–85 (S.D.N.Y.1992).

■ The Court must, therefore, determine whether NOS transacted business in New York as an agent for the individual defendants, Sandler and Kay. Under New York law, plaintiff need not establish a formal agency relationship. *See Kreutter*, 71 N.Y.2d at 467, 527 N.Y.S.2d 195, 522 N.E.2d 40. Plaintiff need only establish that the corporation "engaged in purposeful activities" in New York and acted with knowledge and consent of the individual defendants, and that the defendants "exercised some control over [the company] in the matter." *Id.*

■ In order to establish that the individual defendants exercised "control" over NOS's actions, the plaintiff must allege with sufficient detail that individual defen-

dants Sandler and Kay were primary actors in the allegations that give rise to this action. *See Karabu Corp. v. Gitner*, 16 F.Supp.2d 319, 332–24 (S.D.N.Y.1998). This cannot be established by conclusory allegations or be based solely on the defendants' corporate titles. *See Id.* at 325.

In the complaint, plaintiff sets forth several very specific allegations about both of the individual defendants in terms of their relationship to the corporation, their control over it and the knowledge they had of the acts complained of here.

■ According to plaintiff, Sandler is "director and controlling shareholder of NOS," while Kay is "senior vice president, director and shareholder." Amended Complaint, ¶¶ 6–7. For the most part, plaintiff has generally alleged that Sandler and Kay participated in all complained of activities "jointly and severally." Plaintiff alleges that Sandler and Kay "conspired with and participated in and caused NOS to breach its agreement with Reynolds by refusing to pay further commissions due on phones for which Reynolds arranged a PIC ["primary interexchange carrier"] change to Oncor or another NOS principal." Amended Complaint, ¶ 63. Plaintiff also alleges that Sandler and Kay committed fraud in the inducement when on September 1, 1992, Sandler, Kay, and "other" NOS employees "advised Paul Reynolds or Plaintiff Reynolds that NOS and Oncor, NOS' [sic] common carrier principal at that time, would accurately report and pay all commissions and surcharges due on phones where Reynolds arranged PIC [sic] change to NOS' [sic] principal (then Oncor) in accordance with the parties' agreement so long as such phones remained on-line with NOS and its principal." Amended Complaint, ¶ 176. Plaintiff contends that it "relied on the honesty and integrity of NOS, Gene Sandler and Richard Kay," Amended Complaint, ¶ 178, and that NOS, Sandler, and Kay committed fraud when, "[o]n behalf of NOS, and with the knowledge and consent of NOS, Gene Sandler, Richard Kay, and other NOS employees

advised Reynolds on or about September 1, 1992, that NOS would accurately and truthfully charge and report rates." Amended Complaint, ¶ 231.

Plaintiff has sufficiently alleged that Sandler and Kay have exercised "control" over NOS's actions and have otherwise met the *Kreutter* test. At this stage of the proceedings, the test is a pleading requirement and nothing more. Plaintiff has, therefore, made a prima facie showing of personal jurisdiction over the individual defendants.

■ Furthermore, the Court finds that this exercise of personal jurisdiction "comports with the 'traditional notions of fair play and substantial justice' embodied in the due process clause of the fourteenth amendment." *Retail Software Services*, 854 F.2d at 22 (quoting *McGee v. Int'l Life Ins. Co.*, 355 U.S. 220, 222, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957)). Defendants Sandler and Kay have both received adequate notice through valid service of process, and as determined above, both are subject to personal jurisdiction. *See World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980).

Moreover, both defendants, through NOS, have minimum contacts with the forum state. *See Id.* NOS, through its contractual relationship with plaintiff, created a "continuing obligation[ ]" with a resident of the forum state. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985) (quoting *Travelers Health Ass'n v. Com. of Virginia*, 339 U.S. 643, 648, 70 S.Ct. 927, 94 L.Ed. 1154 (1950)). It is true that merely contracting with an out-of-state party does not establish sufficient minimum contacts; the Court must evaluate "prior negotiations," "contemplated future consequences," "the terms of the contract and the parties' actual course of dealing." *Id.* at 479, 105 S.Ct. 2174. Here, plaintiff alleges that NOS was aware that much of its performance of the agreement would occur in New York.

Moreover, NOS sent commission checks and statements pursuant to the contract to plaintiff's offices in Rochester, New York. Finally, NOS derived revenue from Reynolds' solicitation of New York customers. The individual defendants, "as officers, directors, and shareholders, ... stood to benefit from this entry into the New York market." *Retail Software Services,* 854 F.2d at 23.

Based on the above, defendants Sandler and Kay's motion to dismiss is hereby denied without prejudice. Ultimately, plaintiff bears the burden of establishing personal jurisdiction. The requisite elements have been sufficiently pleaded and, therefore, this motion must be denied. Presumably, as with other issues in the case, discovery will shed further light on the facts supporting personal jurisdiction over the individual defendants.

### B. Operator and NOS's Motion to Dismiss for Improper Venue

Defendants move to dismiss for improper venue. Pursuant to 28 U.S.C. § 1406(a), "[t]he district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought."

Plaintiff claims that venue is proper in the Western District of New York on several grounds. Reynolds asserts that venue is proper under the Communications Act, specifically 47 U.S.C. § 505, which provides that:

The trial of any offense under this chapter shall be in the district in which it is committed; or if the offense is committed upon the high seas, or out of the jurisdiction of any particular State or district, the trial shall be in the district where the offender may be found or into which he shall be first brought. Whenever the offense is begun in one jurisdiction and completed in another it may be dealt with, inquired of, tried, determined, and punished in either jurisdiction in the same manner as if the offense had been actually and wholly committed therein.

Plaintiff alleges that venue is proper under this section because plaintiff's unjust enrichment and "respondeat superior" claims rely on the respondeat superior provisions of the Communications Act, 47 U.S.C. § 217. This section provides:

In construing and enforcing the provisions of this chapter, the act, omission, or failure of any officer, agent, or other person acting for or employed by any common carrier or user, acting within the scope of his employment, shall in every case be also deemed to be the act, omission, or failure of such carrier or user as well as that of the person.

Plaintiff, however, has not alleged any claim under the Communications Act. Moreover, by its terms, the respondeat superior provision of the Communications Act does not establish an independent cause of action. Instead, the provision applies only when "construing and enforcing the provisions" of the Communications Act. A reading of the complaint reveals that the Court is not faced with this task in this action.

The plaintiff also argues that venue is proper under 28 U.S.C. § 1391(a)(2). Section 1391(a)(2) provides:

A civil action wherein jurisdiction is founded only on diversity of citizenship may, except as otherwise provided by law, be brought only in ... a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated....

Where plaintiff asserts multiple causes of action, venue must be established as to each claim. *See Saferstein v. Paul, Mardinly, Durham, James, Flandreau & Rodger,* 927 F.Supp. 731, 736 (S.D.N.Y. 1996). As discussed below, venue is proper in this district for both plaintiff's contract and tort claims.

When determining, in the context of a contract claim, whether venue is appropriate under section 1391(a)(2), "courts consider a number of factors, including where the contract was negotiated or executed, where it was to be performed, and where the alleged breach occurred." *Schomann International Corporation v. Northern Wireless, Ltd.*, 35 F.Supp.2d 205, 212 (N.D.N.Y.1999) (citing *PI, Inc. v. Quality Products, Inc.*, 907 F.Supp. 752, 757–58 (S.D.N.Y.1995)).

Plaintiff alleges that all negotiations of the NOS–Reynolds agreement occurred from Rochester, New York via telephone, U.S. mail, overnight delivery, and facsimile. Reynolds Affidavit, ¶ 16. Defendants argue that the agreement was negotiated in Maryland. Sandler Affidavit, ¶ 6. Reynolds asserts, and the defendants do not dispute, that the contract was partially executed in New York and in Maryland.

Much of Reynolds' performance of the agreement took place in New York. Reynolds' President, A. Paul Reynolds, avers that from 1991 to 1995, 61% of plaintiff's customers were within the state of New York, and 62% of those customers were in this district. Reynolds Affidavit, ¶¶ 4–5. Reynolds further avers that NOS was aware that performance of the agreement would occur "almost exclusively" from Reynolds' Rochester, New York office. Reynolds Affidavit, ¶¶ 22–23.

Although defendants argue that its performance under the agreement did not occur in this district, NOS sent commission statements and payment checks, pursuant to the agreement, to Rochester, New York. Moreover, Operator provided long distance and operator assisted services to Reynolds' customers within this district.

The Court finds that venue as to the contract claims is proper in this district. Although there appears to be some dispute as to where and how the contract was negotiated, it is clear that Reynolds' performance under the contract occurred in this district. Even though many events occurred in Maryland, "a plaintiff does not have to prove that his or her chosen venue is the best forum for the action, a plaintiff need only demonstrate that the choice is a permissible one." *Gregory v. Pocono Grow Fertilizer Corp.*, 35 F.Supp.2d 295, 299 (W.D.N.Y.1999) (citing *Leucadia Nat'l Corp. v. FPL Group Capital, Inc.*, 1993 WL 464691, at *6 (S.D.N.Y. Nov.9, 1993)).

The Court is also convinced that venue is proper for Reynolds' tort claims. Although the tortious conduct arguably occurred in Maryland, plaintiff's injuries, albeit economic in nature, occurred in this district. *See Rothstein v. Carriere*, 41 F.Supp.2d 381, 387 (E.D.N.Y.1999).

### C. Operator and NOS's Motion to Transfer

Defendants argue that pursuant to 28 U.S.C. § 1404(a), this action should be transferred to a more convenient forum—the District of Maryland. Section 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."

The decision whether to grant a transfer under this section is committed to the sound discretion of the Court. *See Filmline (Cross–Country) Productions, Inc. v. United Artists Corp.*, 865 F.2d 513, 520 (2d Cir.1989). It is the defendants' burden to make a strong showing in favor of transfer, and "[a] plaintiff's choice of forum will not lightly be disturbed, especially where, as here, the plaintiff resides in the judicial district where the suit is filed." *Cerasoli v. Xomed, Inc.*, 952 F.Supp. 152, 154 (W.D.N.Y.1997). In determining if transfer is appropriate, the Court must undertake a two-step inquiry: "first, whether the action sought to be transferred is one that 'might have been brought' in the transferee court; and second, whether, considering the 'convenience of parties and witnesses' and 'the interest of justice,' a transfer is appropriate."

*Lencco Racing Co., Inc. v. Arctco, Inc.*, 953 F.Supp. 69, 71 (W.D.N.Y.1997).

Only the second prong is relevant here since plaintiff does not dispute that this action could have been brought in the District of Maryland. In determining whether transfer is appropriate for the "convenience of parties and witnesses" and "in the interest of justice," the Court considers a variety of factors, including:

> (1) the plaintiff's choice of forum; (2) the convenience of the parties and the witnesses; (3) the relative ease of access to sources of proof; (4) the availability of process to compel the attendance of unwilling witnesses; (5) the location of relevant documents and other tangible evidence; and (6) all other practical problems that make trial of a case easy, expeditious and inexpensive.

*Gray v. Millers Mut. Ins. Co.*, 997 F.Supp. 387, 389 (W.D.N.Y.1998) (citing *O'Brien v. Goldstar Technology, Inc.*, 812 F.Supp. 383, 385 (W.D.N.Y.1993)).

■■■ Defendants argue that the majority of its witnesses are located in Maryland. Conversely, Reynolds contends that its witnesses are "primarily" located in Rochester. Defendants have not cited any witnesses who would not be able or willing to testify should this action remain in this district. Both plaintiff and defendants claim that a large number of necessary records are housed in New York and Maryland, respectively. Defendants also claim that "the events concerning payment under the contract and the alleged breach took place in Maryland," a contention that plaintiff disputes. Reynolds also notes that the agreement at issue contains a choice of law clause stating that the agreement is governed by Maryland law and that, because of the docket conditions in the applicable districts, this case would reach trial sooner in the District of Maryland.

As is often the case, the equities are about equally divided in terms of "inconvenience" to the parties. When there is this equipoise, plaintiff's choice of forum should generally not be disturbed. I am not convinced that defendants have made the necessary "strong showing in favor of transfer," *Cerasoli*, 952 F.Supp. at 154, that is required to transfer a case from the plaintiff's chosen forum. I am not at all certain that this case cannot be promptly tried here, if the parties diligently prosecute the action, and the fact that Maryland law controls is not a basis for transfer since a federal court in either district should be capable of interpreting Maryland law. For all these reasons, defendants' motion to transfer this action to the District of Maryland is denied.

### D. Plaintiff's Motion for Partial Summary Judgment

On January 25, 1999, plaintiff filed a motion seeking summary judgment on a "declaratory judgment" count in the amended complaint. The Court deferred consideration of plaintiff's motion pending the resolution of defendants' motions to dismiss or to transfer. Having resolved these motions, the Court finds that summary judgment would be inappropriate at this stage of the litigation. On the present state of the record, there are material issues of fact which preclude deciding the issue as a matter of law. Plaintiff's motion is hereby denied.

## IV. CONCLUSION

Defendants Sandler and Kay's motion to dismiss for lack of personal jurisdiction (Dkt.# 15) is hereby denied. Defendants Operator and NOS's motion to dismiss for improper venue, or, in the alternative, to transfer (Dkt.# 17), is hereby denied. Plaintiff's motion for partial summary judgment (Dkt.# 21) is hereby denied, and defendants NOS, Sandler, Kay and Operator's request to file a reply to plaintiff's February 10, 1999 letter to the Court (Dkt.# 33) is also denied.

IT IS SO ORDERED.