**PRO–FAC COOPERATIVE, INC., et al., Plaintiffs,**

v.

**ALPHA NURSERY, INC., et al., Defendants.**

No. 01–CV–6267L.

United States District Court, W.D. New York.

April 18, 2002.

---

14. *See* note 1, *supra.*

Christopher A. DiPasquale, Paul J. Yesawich, III, Harris Beach LLP, Pittsford, NY, for Plaintiffs.

Steven E. Cole, Wolford & LClair, LLP, Rochester, NY, Mary Jo S. Korona, Rochester, NY, Paul R. Connolly, Connolly & Doyle, Salem, OR, Daniel P. Purcell, Ward, Norris, Heller & Reidy, LLP, Rochester, NY, for Defendants.

## DECISION AND ORDER

LARIMER, Chief Judge.

## INTRODUCTION

Plaintiffs, Pro–Fac Cooperative, Inc. ("Pro–Fac"), Agrilink Foods, Inc. ("Agrilink") (a wholly-owned subsidiary of Pro–Fac), and nineteen individual officers and directors of Pro–Fac and Agrilink, commenced this declaratory judgment action on May 25, 2001, against roughly 150 Oregon farm operations. This action arises out of certain contractual relationships between plaintiffs and defendants, relating to another onetime subsidiary of Pro–Fac, PF Acquisition II, Inc., d/b/a AgriFrozen Foods. Jurisdiction is premised on both the existence of a federal question, 28 U.S.C. § 1331, and diversity of citizenship, 28 U.S.C. § 1332. Defendants have moved to dismiss the complaint for lack of personal jurisdiction and improper venue under Fed.R.Civ.P. 12(b)(2) and 12(b)(3), or in the alternative for discretionary dismissal under the Declaratory Judgment Act, 28 U.S.C. § 2201.

## FACTUAL BACKGROUND

Pro–Fac is a New York agricultural cooperative corporation with its principal place of business in Rochester, New York. Pro–Fac was formed in 1960 to process and market crops grown by its members, all of whom are persons or entities engaged in the growing of agricultural products. Growers who wish to become members of Pro–Fac are required to purchase shares of its common stock. Complaint Ex. B, at 1.

Pro–Fac is also the parent company of Agrilink, which is a producer and marketer of processed food products. Agrilink operates around twenty-eight processing facilities throughout the United States. Complaint Ex. B, at 6.

In early 1999, Pro–Fac created another subsidiary, PF Acquisition II, Inc., d/b/a AgriFrozen Foods ("PFA"), which was incorporated under New York law in January 1999 and commenced operations in February. PFA was formed to acquire substantially all the assets of AgriPac, Inc., an Oregon cooperative that had filed for bankruptcy protection on January 4, 1999. Complaint ¶ 25; Ex. B, at 5. PFA did subsequently purchase those assets, including a processing plant in Woodburn, Oregon ("the Woodburn plant"), in a sale approved by the bankruptcy court. Complaint ¶ 26; Ex. B, at 22. Pursuant to a service agreement between Agrilink and

PFA, Agrilink has provided management services to PFA since February 22, 1999. Complaint ¶ 27.

All of the defendants in this action had been member-growers of AgriPac before it entered bankruptcy. In early 1999, PFA began soliciting AgriPac's former growers to enter into a general marketing agreement calling for the supply of raw product to PFA for a three-year term beginning in 1999. Complaint ¶ 28; Ex. A. About 190 of the former AgriPac growers entered into the general marketing agreement with PFA. Complaint ¶ 29.

In December 1999, Pro–Fac solicited PFA's growers to purchase Pro–Fac securities, which Pro–Fac had registered with the Securities Exchange Commission earlier that year. The prospectus offered the growers the opportunity to receive stated amounts of the securities in exchange for termination of the growers' rights to cancel their crop deliveries under the general marketing agreement, and substitution of Pro–Fac for PFA under the general marketing agreement and the growers' crop delivery agreements. About 150 growers, including all of the defendants in this action, entered into subscription agreements with Pro–Fac for Class B shares. Complaint ¶¶ 31, 32.

In January 2001, PFA informed its growers that PFA would not pay any remaining payments on their 2000 crop contracts, and that it would not process a crop in 2001. Complaint ¶ 34. PFA also informed the growers that it was closing the Woodburn plant. Affidavit of Paul R.J. Connolly, Ex. B, ¶ 5.[1] Subsequent to this announcement, Pro–Fac abandoned its ownership interest in PFA. Complaint ¶ 35.

Shortly after PFA's announcement, many of its growers accelerated the remaining payments due for crops they had delivered to the Woodburn plant, and filed agricultural produce liens on PFA's inventory to secure payments of all amounts due. Connolly Aff. ¶ 4. On January 25, 2001, those growers commenced an action in Oregon state court ("the lien foreclosure action") against Pro–Fac, Agrilink, and PFA, among others, for foreclosure of their agricultural liens. Connolly Aff., Ex. B. The plaintiffs in that action have alleged that PFA owes each of them money under the terms of the general marketing agreements.

During the course of the lien foreclosure action, Paul R.J. Connolly, Esq. (who represents both the plaintiffs in the lien foreclosure action and most of the defendants in the instant action), by letter dated April 27, 2001, made a demand on Pro–Fac, Agrilink and PFA under Or.Rev.Stat. § 62.440, for various documents. Complaint, Ex. C. In addition, by letter dated May 11, 2001, Connolly, acting on behalf of one of PFA's growers, Stan Seifer (who is also the lead plaintiff in the lien foreclosure action), notified Pro–Fac and Agrilink of Seifer's intent to file a class action lawsuit against them on behalf of all Pro–Fac Class B shareholders.[2] Complaint, Ex. D.

---

1. Exhibit B to the Connolly Affidavit is a copy of a complaint in a lien foreclosure action filed by a number of the defendants in this case against Pro–Fac, Agrilink, PFA, *et al.*, in state court in Oregon. I note that unlike Rule 12(b)(6), analysis under Rules 12(b)(2) and 12(b)(3) permits the district court to consider facts outside the pleadings. *See, e.g., Argueta v. Banco Mexicano, S.A.,* 87 F.3d 320, 324 (9th Cir.1996); *Patterson v. F.B.I.,* 893 F.2d

595, 603 (3d Cir.), *cert. denied,* 498 U.S. 812, 111 S.Ct. 48, 112 L.Ed.2d 24 (1990); *J.B. Harris, Inc. v. Razei Bar Indus., Ltd.,* 37 F.Supp.2d 186, 189 (E.D.N.Y.1998), *aff'd,* 181 F.3d 82 (2d Cir.1999).

2. Such notice is required under Oregon law prior to commencement of a class action. ORCP 32 H.

The notice alleged that Pro–Fac and Agrilink had misrepresented certain facts in its dealings with Seifer, and that they owed him money for his crops.

Plaintiffs commenced this action on May 25, 2001. Plaintiffs allege that a dispute has arisen between plaintiffs and defendants concerning their respective rights, obligations and liabilities, such that this action presents an actual controversy warranting the issuance of a declaratory judgment. Specifically, plaintiffs ask the court to declare that: defendants' rights are limited to the terms of their general marketing agreements; plaintiffs have not mismanaged or converted PFA's assets; defendants have not been deprived of their equity interests in Pro–Fac; Pro–Fac is entitled to redeem defendants' securities for a contractually designated amount; defendants are not entitled to examine the majority of the documents they requested in the April 27, 2001 document demand; and defendants are not entitled to any monetary or equitable relief based upon threatened claims against plaintiffs based upon alleged securities laws violations or any other theory of liability.

Several significant events have occurred since the commencement of this action. On June 28, 2001, PFA filed a petition in the United States Bankruptcy Court for the Western District of New York under Chapter 7 of the Bankruptcy Code. In addition, on July 10, 2001, Pro–Fac and Agrilink filed a notice of removal with the Clerk of the United States Bankruptcy Court for the District of Oregon to remove the lien foreclosure action to that court. On February 27, 2002, Bankruptcy Judge Frank R. Alley, III of the District of Oregon denied a motion to remand by the plaintiffs in that action.

On August 2, 2001, Blue Line Farms, Inc. (one of the plaintiffs in the lien foreclosure action and a defendant in this action) filed a class-action complaint in Oregon state court ("the Blue Line Farms action"), against Pro–Fac, Agrilink, and individual defendants, alleging claims for common law fraud and Oregon securities law violations, and requesting an accounting and injunctive relief. Connolly Aff. ¶ 15. Defendants also removed that action to the Oregon bankruptcy court, asserting that the action would be a core proceeding in PFA's bankruptcy case in the Western District of New York. Defendants then moved in the Oregon bankruptcy court for a stay, or alternatively, for a change of venue to this district, and plaintiffs moved to remand the case to state court. On December 3, 2001, Bankruptcy Judge Elizabeth L. Perris granted the plaintiffs' motion, denied the defendants' motion, and directed that the case be remanded to Oregon state court.[3] *See* Attachment to Docket Item 40.

## DISCUSSION

### I. Personal Jurisdiction–General Principles

 On a motion to dismiss for lack of personal jurisdiction, the plaintiff bears

---

**3.** Both Bankruptcy Judge Perris and United States District Judge Garr King of the District of Oregon subsequently denied motions for a stay of Judge Perris's remand order pending appeal. Judge Perris's order granting the motion to remand is currently on appeal before Judge King. *See* Attachments to Docket Items 41 and 42.

On August 16, 2001, plaintiffs in the instant action moved for an order staying the Blue Line Farms action, which was then pending in the District of Oregon, and accepting a transfer of that action to this district. Because the Blue Line Farms action has since been remanded to state court and is no longer pending in the Oregon district court, plaintiffs' motion is denied as moot.

the burden of proving jurisdiction over defendants by a preponderance of the evidence. *See Marine Midland Bank, N.A. v. Miller,* 664 F.2d 899, 904 (2d Cir.1981). Where, as here, jurisdiction is challenged prior to discovery, plaintiffs may defeat a motion to dismiss by "pleading in good faith ... legally sufficient allegations of jurisdiction." *Jazini v. Nissan Motor Co., Ltd.,* 148 F.3d 181, 184 (2d Cir.1998). Plaintiffs, therefore, need only make a prima facie showing of jurisdiction to survive a motion to dismiss. *Id.; Ball v. Metallurgie Hoboken–Overpelt, S.A.,* 902 F.2d 194, 197 (2d Cir.), *cert. denied,* 498 U.S. 854, 111 S.Ct. 150, 112 L.Ed.2d 116 (1990); *Reynolds Corp. v. National Operator Services, Inc.,* 73 F.Supp.2d 299, 302 (W.D.N.Y.1999).

■■■ In a diversity action, jurisdiction is determined according to the law of the state in which the district court sits. *See Jazini,* 148 F.3d at 183–84. In a federal question case where a defendant resides outside the forum state, the federal court also applies the forum state's personal jurisdiction rules, unless a federal statute specifically provides for national service of process. *Omni Capital Int'l v. Rudolf Wolff & Co.,* 484 U.S. 97, 104–05, 108 S.Ct. 404, 98 L.Ed.2d 415 (1987); *PDK Labs, Inc. v. Friedlander,* 103 F.3d 1105, 1108 (2d Cir.1997); *Mareno v. Rowe,* 910 F.2d 1043, 1046 (2d Cir.1990), *cert. denied,* 498 U.S. 1028, 111 S.Ct. 681, 112 L.Ed.2d 673 (1991).

In the case at bar, plaintiffs allege that this court may exercise personal jurisdiction over defendants both under New York's long-arm statute, C.P.L.R.

§ 302(a)(1), and pursuant to § 27 of the Securities Exchange Act of 1934 ("the Act"), 15 U.S.C. § 78aa. Plaintiffs also contend that defendants have voluntarily submitted to jurisdiction in New York, in effect waiving any right to assert lack of personal jurisdiction here, by filing a demand for documents that plaintiffs contend are governed by N.Y. Bus. Corp. L. § 624.

## II. New York's Long–Arm Statute

In support of their motion to dismiss for lack of personal jurisdiction, every one of the defendants has submitted an affidavit in support of the motion. All the defendants allege that they are citizens and residents of Oregon, with their principal places of business in Oregon. The affidavits further state, in essence, that defendants' vegetable-growing businesses have no legally significant ties to New York State: they are not licensed to do business in New York, they have never transacted or solicited business in New York, they have no offices, employees or agents here, etc. According to defendants, all of the operative events in this case took place in Oregon, which is also where most of the relevant records and other evidence are located. *See* Defendants' Affidavits (Docket Item 6).

■■■ Based on these allegations, defendants contend that jurisdiction is lacking under C.P.L.R. § 302(a)(1), which provides jurisdiction over a non-domiciliary "who in person or through an agent ... transacts any business within the state or contracts anywhere to supply goods or services in the state ...."[4] To exercise personal jur-

---

4. Defendants also contend that they have never "done business" in New York for purposes of C.P.L.R. § 301, which subjects a non-domiciliary to personal jurisdiction in New York with respect to any cause of action if he is "engaged in such a continuous and systematic course of 'doing business' here as to warrant

a finding of 'presence' in this jurisdiction." *Simonson v. International Bank,* 14 N.Y.2d 281, 285, 251 N.Y.S.2d 433, 200 N.E.2d 427 (1964) (quoted in *McGowan v. Smith,* 52 N.Y.2d 268, 272, 437 N.Y.S.2d 643, 419 N.E.2d 321 (1981)). Plaintiffs do not appear

isdiction over an out-of-state defendant under that statute, two things must be shown. First, the defendant "must 'transact business' within the state [or contract to supply goods or services in the state]; second the claim against the nondomiciliary must arise out of that business activity." *CutCo Indus., Inc. v. Naughton*, 806 F.2d 361, 365 (2d Cir.1986).

A nondomiciliary transacts business in New York when he purposefully avails himself of the privilege of conducting activities in New York, thus invoking the benefits and protection of its laws. *Id.* A single act may be enough, *Longines–Wittnauer Watch Co. v. Barnes & Reinecke, Inc.*, 15 N.Y.2d 443, 446, 261 N.Y.S.2d 8, 209 N.E.2d 68, *cert. denied*, 382 U.S. 905, 86 S.Ct. 241, 15 L.Ed.2d 158 (1965), but no one act need give rise to jurisdiction. Instead, the court should look to the quantity and composite quality of the defendant's actions in the aggregate. *Id.*

The transaction-of-business test under § 302(a)(1) requires far fewer contacts with New York than the "doing business" test of § 301. *Hoffritz for Cutlery, Inc. v. Amajac, Ltd.*, 763 F.2d 55, 58 (2d Cir.1985); *Manhattan Life Ins. v. A.J. Stratton Syndicate*, 731 F.Supp. 587 (S.D.N.Y.1990). For jurisdiction to exist under § 302, however, the claim must arise out of the business transacted. *CutCo*, 806 F.2d at 365; *Marketing Showcase, Inc. v. Alberto–Culver Co.*, 445 F.Supp. 755 (S.D.N.Y.1978).

A claim arises out of business activity here if there is "some articulable nexus between the business transacted and the cause of action sued upon." *McGowan v. Smith*, 52 N.Y.2d 268, 272, 437 N.Y.S.2d 643, 419 N.E.2d 321 (1981). A finding of jurisdiction is not precluded by the fact that defendant was in New York only for a short period, *George Reiner & Co. v. Schwartz*, 41 N.Y.2d 648, 394 N.Y.S.2d 844, 363 N.E.2d 551 (1977), provided that the claim is "a direct consequence of purposeful New York activity and the benefits and protections of New York law have been utilized" by defendant. *Tonns v. Spiegel's*, 90 A.D.2d 548, 550, 455 N.Y.S.2d 125 (1982).

Defendants state that nearly all of the relevant events here occurred in Oregon. Defendants are Oregon farmers who were solicited, in Oregon, by PFA (whose principal place of business was in Oregon), to sign contracts in Oregon for the delivery of crops to a processing plant in Oregon. Thereafter, Pro–Fac mailed to defendants in Oregon stock subscription agreements, which defendants signed in Oregon and returned to Pro–Fac's agent in Oregon. Although some events may have occurred in New York (such as mailing out the subscription agreements), those were *plaintiff's* acts, not defendants'.

Plaintiffs contend that jurisdiction is proper under § 302(a)(1), for two reasons. First, plaintiffs assert that defendants have transacted business in New York through Pro–Fac, which plaintiffs assert was an agent of defendants. Second, they contend that defendants have contracted to supply goods in New York.

In support of their assertion that defendants have transacted business in New York, plaintiffs note that the general marketing agreements and Pro–Fac's prospectus expressly made PFA (which was itself an agent of Pro–Fac) and Pro–Fac, respectively, defendants' "exclusive agent[s] for processing and marketing" of defendants' crops. *See* Complaint, Ex. A ¶ 2(b); Ex. B at 31. Plaintiffs state that this establishes

---

to dispute that § 301 is inapplicable in this

case, however.

the existence of an agency relationship between defendants and Pro–Fac, a New York agricultural cooperative of which defendants were members, which defendants understood had its principal place of business in New York. .

Plaintiffs have also submitted an affidavit of David M. Mehalik, general counsel for Agrilink, setting forth the alleged activities of defendants in New York through their agents, Pro–Fac and PFA. In general, plaintiffs contend that they acted in New York to market members' crops, and that they did so for the benefit of all members of the cooperative, including defendants. Plaintiffs state that over twenty percent of PFA's overall revenue was derived from the New York market. PFA's receipt of that revenue, according to plaintiffs, directly inured to the benefit of defendants, because the amount that a cooperative grower receives for his product is largely dependent upon the business success of the processing arm of the cooperative, in this case, PFA.

Defendants concede that an agency relationship existed between them and PFA and Pro–Fac, but they contend that it "was not a typical" one. Defendants' Reply Memorandum at 6. Defendants state that once they delivered their Oregon-grown crops to a processing plant in Oregon, Pro–Fac and its subsidiaries took title to those crops, to process and market as they saw fit. Whatever marketing functions Pro–Fac and PFA performed in New York, defendants state, were performed on behalf of Pro–Fac, PFA and Agrilink themselves, as corporate entities, not on behalf of defendants as principals.

■ Defendants also advance a second, and in my view more compelling, reason why, even if plaintiffs did perform acts in New York as agents of defendants, plaintiffs cannot use those acts as a basis for obtaining personal jurisdiction over defendants here. "It is well established ... that in a suit between an agent and his out-of-state principal, a court cannot exercise jurisdiction over the defendant-principal based on the plaintiff-agent's own activities within the state." *Stein v. Microelectronic Pkg., Inc.*, No. 98 Civ. 8952, 1999 WL 540443 *5 (S.D.N.Y. July 26, 1999). The New York Court of Appeals so held in *Haar v. Armendoris Corp.*, 31 N.Y.2d 1040, 1041–42, 342 N.Y.S.2d 70, 294 N.E.2d 855 (1973), "and this 'rule of *Haar*' remains good law." *Chaldon Associates, LLC v. Daedalus Capital, LLC*, No. 01 CIV 2015, 2001 WL 1160580 *2 (S.D.N.Y. Oct. 1, 2001) (citing *Laufer v. Ostrow*, 55 N.Y.2d 305, 312, 449 N.Y.S.2d 456, 434 N.E.2d 692 (1982); *Stein*, 1999 WL 5405443 *5; *PaineWebber Inc. v. Westgate Group, Inc.*, 748 F.Supp. 115, 119 (S.D.N.Y.1990)); *People v. Rangel*, 163 Ill.App.3d 730, 114 Ill.Dec. 781, 516 N.E.2d 936, 1987 WL 1926 *2 (S.D.N.Y. 1987) ("A suit between an agent and its principal can go forward only if jurisdiction over the latter is based on its independent and purposeful activities within the forum"); *Celton Man Trade, Inc. v. Utex S.A.*, No. 84 Civ. 8179, 1986 WL 6788 *2–3 (S.D.N.Y. June 12, 1986) (applying *Haar*).

■ Since the only factual basis for plaintiffs' claim that personal jurisdiction may be exercised over defendants pursuant to § 302(a)(1)'s "transaction of business" test is their contention that defendants transacted business in New York through Pro–Fac and its subsidiary, PFA, as agents of defendants, I conclude that under the rule established in *Haar*, personal jurisdiction is lacking under that test.

■ I am equally unpersuaded by defendants' assertion that plaintiffs are subject to jurisdiction on the ground that they

have contracted to supply goods in New York. Plaintiffs contend that PFA processed and distributed finished goods produced from defendants' crops throughout the United States, including New York. As with the transaction of business, however, § 302(a)(1) requires that the cause of action arise from the defendant's contracting to supply good or services in New York for personal jurisdiction to exist. Plaintiffs have not shown how any of the claims at issue here relate, in other than the most tangential fashion, from defendants' contracting to supply goods that eventually found their way into New York. Defendants may have contracted to supply agricultural products to PFA, with the understanding that PFA would, after processing those products, market and distribute the finished product throughout the United States, including New York, but it is a stretch to say that defendants contracted to supply goods in New York, much less that plaintiffs' claims (or defendants' threatened claims against plaintiffs) "arise from" that activity. *See Carpino v. National Store Fixtures Inc.*, 275 A.D.2d 580, 712 N.Y.S.2d 684 (3d Dep't) ("knowledge of a product's destination, in and of itself, has been determined insufficient to establish jurisdiction"), *leave to appeal denied*, 95 N.Y.2d 769, 722 N.Y.S.2d 472, 745 N.E.2d 392 (2000).

## III. Section 27 of the Securities Exchange Act of 1934, 15 U.S.C. § 78aa

■ Plaintiffs also contend that jurisdiction exists under § 27 of the Act, 15 U.S.C. § 78aa,[5] which permits a securities action to be brought "in the district wherein any act or transaction constituting the [alleged] violation occurred," or "in the district wherein the defendant is found or is an inhabitant or transacts business . . . ." The statute also allows process to be served "in any other district of which the defendant is an inhabitant or wherever the defendant may be found." *Id.*

The Second Circuit has stated that this section "confers personal jurisdiction over a defendant who is served anywhere within the United States." *Kidder, Peabody & Co., Inc. v. Maxus Energy Corp.*, 925 F.2d 556, 562 (2d Cir.), *cert. denied*, 501 U.S. 1218, 111 S.Ct. 2829, 115 L.Ed.2d 998 (1991). In addition, with respect to the "minimum contacts" due process requirement, *see International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945), courts have held that, in cases where the court's personal jurisdiction is invoked under § 78aa (or other federal statutes authorizing nationwide service of process) the relevant forum is the entire United States; in other words, the proper inquiry is whether the defen-

---

5. § 78aa. Jurisdiction of offenses and suits

The district courts of the United States and the United States courts of any Territory or other place subject to the jurisdiction of the United States shall have exclusive jurisdiction of violations of this chapter or the rules and regulations thereunder, and of all suits in equity and actions at law brought to enforce any liability or duty created by this chapter or the rules and regulations thereunder. Any criminal proceeding may be brought in the district wherein any act or transaction constituting the violation occurred. Any suit or action to enforce any liability or duty created by this chapter or rules and regulations there-

under, or to enjoin any violation of such chapter or rules and regulations, may be brought in any such district or in the district wherein the defendant is found or is an inhabitant or transacts business, and process in such cases may be served in any other district of which the defendant is an inhabitant or wherever the defendant may be found. Judgments and decrees so rendered shall be subject to review as provided in sections 1254, 1291, 1292, and 1294 of Title 28. No costs shall be assessed for or against the Commission in any proceeding under this chapter brought by or against it in the Supreme Court or such other courts.

dant has minimum contacts with the United States. *See, e.g., United States S.E.C. v. Carrillo,* 115 F.3d 1540, 1544 (11th Cir. 1997); *Application to Enforce Administrative Subpoenas Duces Tecum of S.E.C. v. Knowles,* 87 F.3d 413, 417 (10th Cir. 1996) ("The question then before this court is whether Knowles has sufficient minimum contacts with the United States to enable the district court to exercise personal jurisdiction over him consistent with the Due Process Clause of the Fifth Amendment"); *Busch v. Buchman, Buchman & O'Brien, Law Firm,* 11 F.3d 1255, 1258 (5th Cir.1994); *United Liberty Life Insurance Co. v. Ryan,* 985 F.2d 1320, 1330 (6th Cir.1993) (national-service-of-process provision of § 78aa "confers personal jurisdiction in any federal district court over any defendant with minimum contacts to the United States").

By arguing that *personal* jurisdiction exists under § 78aa, however, plaintiffs assume the existence of *subject matter* jurisdiction by virtue of a claim arising out of an alleged violation of, or duty created by, Chapter 2B of Title 15, 15 U.S.C. §§ 78a–78mm. If there is no such claim before the court, then § 78aa does not apply in the first place. By its terms, the statute only relates to the bringing of a "suit or action to enforce any liability or duty created by this chapter or rules and regulations thereunder, or to enjoin any violation of such chapter or rules and regulations ...."[6]

In the case at bar, plaintiffs do not contend that their lawsuit seeks "to enforce any liability or duty" arising under Chapter 2B of Title 15, "or to enjoin any violation" of the federal securities laws. 15 U.S.C. § 78aa. Instead, they maintain that because they are the subject of

threatened securities fraud claims by defendants, this court may exercise jurisdiction over defendants under § 78aa in the same manner as if defendants had commenced their own securities fraud action in federal court.

Because plaintiffs are not themselves alleging any securities law violations, however, but rather seek a declaration that plaintiffs are not entitled to relief under those laws, they must also show that the dispute underlying the allegedly threatened claims presents an "actual controversy" within the meaning of the Declaratory Judgment Act, 28 U.S.C. § 2201(a). That act provides, in pertinent part, that "[i]n a case of actual controversy, within its jurisdiction ... any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relation of any interested party seeking such declaration, whether or not further relief is or could be sought."

"The Declaratory Judgment Act does not expand jurisdiction. Nor does it provide an independent cause of action. Its operation is procedural only-to provide a form of relief previously unavailable. Therefore, a court may only enter a declaratory judgment in favor of a party who has a substantive claim of right to such relief." *In re Joint Eastern and Southern Dist. Asbestos Litigation,* 14 F.3d 726 (2d Cir.1993) (citing *Skelly Oil Co. v. Phillips Petroleum Co.,* 339 U.S. 667, 671, 70 S.Ct. 876, 94 L.Ed. 1194 (1950), and *Aetna Life Ins. Co. v. Haworth,* 300 U.S. 227, 240, 57 S.Ct. 461, 81 L.Ed. 617 (1937)). Before they can invoke § 78aa, then, plaintiffs must show that there is an "actual controversy" within the court's jurisdiction under Chapter 2B of Title 15.

---

**6.** Although subject matter jurisdiction is also premised on diversity of citizenship, then, § 78aa cannot provide a basis for personal jurisdiction absent a claim under Chapter 2B of Title 15.

Plaintiffs base their assertion that such a controversy exists on two documents: the May 11, 2001 class action demand and notice, and the April 27, 2001 document demand in connection with the lien foreclosure lawsuit. The former states that Stan Seifer was issued shares of Pro–Fac Class B Common stock in 2000, and that Pro–Fac, Agrilink and PFA "are potential defendants who are liable to Mr. Seifer and similarly-situated AgriFrozen growers for claims under common-law and statutory theories of liability." Complaint Ex. D. The notice, which was served on plaintiffs pursuant to Rule 32H of the Oregon Rules of Civil Procedure, does not specify what those theories of liability are, nor does it expressly refer to any alleged securities laws violations.

The document demand was made pursuant to Or.Rev.Stat. § 62.440, on behalf of certain named Class B shareholders of Pro–Fac, and states that the shareholders "may have derivative claims for damages on behalf of Pro–Fac against each officer and director of Pro–Fac, stock fraud claims, . . ." and other claims. Complaint Ex. C at 2 (footnote omitted). The demand set forth some of the specific possible misrepresentations and other acts and omissions relating to these claims, but did not reference any statutory bases of liability or otherwise specify the type of stock fraud claims that might exist.

Notably, both the class action demand and notice and the document demand were made pursuant to Oregon, not federal, law. The mere fact that they referenced possible or alleged securities law violations did not indicate that defendants were contemplating filing an action against plaintiffs under the federal securities laws.

In fact, they suggested just the opposite: that defendants were *not* contemplating a *federal* lawsuit. As noted, a class action demand and notice is a prerequisite to a class action under Oregon law. By serving plaintiffs with such notice, then, defendants indicated that they were preparing to commence an action in Oregon state court. Such an action *could not* include federal securities fraud claims, however. In addition to its service-of-process provision, § 78aa states that United States district courts "shall have exclusive jurisdiction" of suits under Title 15. Thus, the class action demand and notice did not give rise to a threatened federal securities claim against plaintiffs. Likewise, the document demand was made pursuant to an Oregon statute, and. did not indicate any intention to commence a federal lawsuit. *See Public Service Comm'n v. Wycoff,* 344 U.S. 237, 248, 73 S.Ct. 236, 97 L.Ed. 291 (1952) (in a federal declaratory judgment action, "it is the character of the threatened action" that determines whether federal-question jurisdiction exists in the district court).

In support of their position, plaintiffs rely on *Kansas City Power & Light Co. v. Kansas Gas and Elec. Co.,* 747 F.Supp. 567 (W.D.Mo.1990), in which a Missouri electric utility company brought an action against a Kansas utility, seeking a declaration that its tender offer for all the outstanding shares of the defendant's stock complied with federal securities law. The defendant moved to dismiss, partly on the ground that the plaintiff's claim did not present an "actual controversy" within the meaning of the Declaratory Judgment Act or in the alternative to transfer the case to the District of Kansas.

The court denied the motion, and in so doing rejected the defendant's assertion that the court lacked jurisdiction over the plaintiff's claim pursuant to § 78aa because the complaint did not seek to enforce a duty or liability created by the Act or to enjoin any violation, but merely assumed that the defendants would at some time in

the future make a charge under the Act against the plaintiff. Stating that "[i]f a declaratory judgment defendant could have brought an action in federal court to enforce its rights, then the federal court has jurisdiction over the declaratory judgment action brought by the plaintiff," *id.* at 572 (citing *Janakes v. U.S.P.S.*, 768 F.2d 1091, 1093 (9th Cir.1985)), the court said that it would clearly have had jurisdiction pursuant to § 78aa if the defendant had filed a suit against the plaintiff challenging the legality of its tender offer, because such a suit would have been brought to enforce a liability or. duty created by the Act. *Id.* Therefore, the court concluded, it had jurisdiction to entertain the declaratory judgment action filed by the plaintiff. *Id.*

In *Kansas City Power & Light,* howeverer, the defendant actually had filed a suit in federal court in Kansas (eight days after the plaintiff filed its declaratory judgment action in Missouri), alleging that the tender offer was illegal under both federal and state law. *Id.* at 569. In fact, the plaintiff in *Kansas City Power & Light* specifically argued that "an actual controversy exist[ed] because [defendant] KG & E *ultimately brought the lawsuit [plaintiff] KCP & L anticipated ...*, that is, KG & E's action in the United States District Court for the District of Kansas in which the legality of KCP & L's tender offer [wa]s challenged." *Id.* at 570 (emphasis added). The situation in the case at bar is different. Not only have defendants not filed a federal securities action against plaintiffs, they have never given any indication that they intend to do so, and the action that they *have* filed was brought in Oregon state court, and alleges only claims under Oregon state law.

■ Furthermore, courts have held that although the relevant determination is whether an "actual controversy" within the district court's jurisdiction existed at the time that the declaratory judgment action was commenced, 28 U.S.C. § 2201(a), "subsequent events can reinforce the correctness of the conclusion." *BP Chemicals Ltd. v. Union Carbide Corp.*, 4 F.3d 975, 980 (Fed.Cir.1993); *Fusco v. Rome Cable Corp.*, 859 F.Supp. 624, 631 n. 8 (N.D.N.Y.1994). Whereas in *Kansas City Power & Light* the declaratory judgment defendant's subsequent filing of a complaint in federal court supported the court's finding that an actual controversy existed at the time that the plaintiff commenced the declaratory judgment action, here events subsequent to the filing of the complaint reinforce the conclusion that no actual controversy within this court's federal-question jurisdiction existed at the time this action was commenced. A class action against plaintiffs *has* been commenced, but in Oregon state court, and it asserts claims under *Oregon* securities law.[7] That action need not, and does not, directly implicate federal securities law. *See Chronologic Simulation, Inc. v. Sanguinetti*, 892 F.Supp. 318, 320 (D.Mass. 1995) (granting plaintiffs' motion to remand action to state court after it had been removed by defendant, and rejecting defendant's argument that state court action was "a thinly veiled attempt to construe federal securities law," since plaintiffs "ha[d] the option to present only their state court claims in the state action," and had done so; "The fact that Plaintiffs purposefully omitted reference to federal issues is irrelevant").

In reaching this conclusion, I am mindful that "[i]n the trial court, of course, a

---

**7.** I note that at page 11 of her December 3, 2001 decision remanding the class action to state court, Bankruptcy Judge Perris said,

with respect to the class action, that "[s]tate law not only predominates; all of the claims are based on state law."

party seeking a declaratory judgment has the burden of establishing the existence of an actual case or controversy" within the jurisdiction of the district court. *Cardinal Chem. Co. v. Morton Int'l, Inc.*, 508 U.S. 83, 95, 113 S.Ct. 1967, 124 L.Ed.2d 1 (1993). *See also E.R. Squibb & Sons, Inc. v. Lloyd's & Companies*, 241 F.3d 154, 177 (2d Cir.2001) ("A party seeking a declaratory judgment bears the burden of proving that the district court has jurisdiction"). I find that plaintiffs have failed to carry that burden. Accordingly, § 78aa has no application to this case.

## IV. Defendants' Alleged "Submission" to Jurisdiction in New York

Plaintiffs also contend that defendants have submitted to jurisdiction in this district by virtue of the April 27, 2001 document demand made during the course of the lien foreclosure action. Although the demand was ostensibly made pursuant to an Oregon statute, ORS § 62.440, defendants argue in effect that that statute does not apply to Pro–Fac, because Pro–Fac is a New York cooperative corporation, albeit one that is authorized to do business in Oregon. According to plaintiffs, defendants' document demand is properly governed not by § 62.440, but by New York Business Corporation Law § 624, which gives members of New York cooperatives the same right to demand records that ORS § 62.440 provides to members of Oregon cooperatives. Section 624(d) also provides that if a demand for business documents pursuant to § 624 is refused, the person making the demand may seek an order to show cause from "the supreme court in the judicial district where the office of the corporation is located ...," which in Pro–Fac's case is Rochester, New York. Plaintiffs therefore argue that by making the document demand, defendants have voluntarily consented to jurisdiction in New York.

Plaintiffs have submitted no authority in support of this strained argument, and it requires little discussion. In their document demand, the plaintiffs in the Oregon lien foreclosure action cited only an Oregon statute, and never invoked any provision of New York law. If plaintiffs believe that the Oregon statute relied upon by the lien foreclosure plaintiffs is inapplicable to plaintiffs, they may raise that issue in the lien foreclosure action, but there is no sound reason why the document demand should be twisted into an implicit "submission" to jurisdiction in New York.

## V. Discretionary Dismissal

Although my conclusion that defendants are not subject to personal jurisdiction in this district provides a sufficient basis upon which to grant their motion to dismiss, I also note that even if I were to find that personal jurisdiction does exist here, I would in my discretion decline to exercise jurisdiction over plaintiffs' claims for declaratory relief.

The Declaratory Judgment Act permits the Court to decline to adjudicate otherwise justiciable cases within the court's jurisdiction. *See* 28 U.S.C. § 2201(a) (court *"may declare* the rights and other legal relation of any interested party seeking such declaration"; emphasis added); *Wilton v. Seven Falls Co.*, 515 U.S. 277, 289–90, 115 S.Ct. 2137, 132 L.Ed.2d 214 (1995) ("district courts' decisions about the propriety of hearing declaratory judgment actions, which are necessarily bound up with their decisions about the propriety of granting declaratory relief, should be reviewed for abuse of discretion"); *Sheet Metal Div. of Capitol Dist. Sheet Metal, Roofing & Air Conditioning Contractors Ass'n, Inc. v. Local 38 of Sheet Metal Workers Int'l Ass'n*, 208 F.3d 18, 22 (2d Cir.2000) ("it is well-settled that the trial

court's decision to exercise declaratory jurisdiction is a discretionary one") (quoting *Broadview Chem. Corp. v. Loctite Corp.,* 417 F.2d 998, 1000 (2d Cir.1969)).

When another proceeding is pending in state court, the district court must decide "whether the questions in controversy between the parties to the federal suit, and which are not foreclosed by the applicable substantive law, can be better settled in the proceeding pending in the state court." *Wilton,* 515 U.S. at 282, 115 S.Ct. 2137. The factors that should be considered include: (1) the scope of the pending state proceeding and the nature of the defenses available there; (2) whether the claims of all parties in interest can satisfactorily be adjudicated in that proceeding; (3) whether the necessary parties have been joined; (4) whether such parties are amenable to process in that proceeding; (5) avoiding duplicative proceedings; and (6) avoiding forum shopping. *Id.* at 280, 283, 115 S.Ct. 2137; *Brillhart v. Excess Ins. Co. of America,* 316 U.S. 491, 495, 62 S.Ct. 1173, 86 L.Ed. 1620 (1942). Courts have also considered the abstention factors set forth by the Supreme Court in *Colorado River Water Cons. Dist. v. United States,* 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976), and *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983), which include: (1) the relative convenience of the fora; (2) the order of filing; and (3) choice of law. *See, e.g., DePasquale v. Allstate Ins. Co.,* 179 F.Supp.2d 51, 58 (E.D.N.Y.2002); *The Alpine Group, Inc. v. Johnson,* No. 01 Civ. 5532, 2002 WL 10495 *3 (S.D.N.Y. Jan. 3, 2002); *National Union Fire Ins. Co. of Pittsburgh, PA v. Warrantech Corp.,* No. 00 Civ. 5007, 2001 WL 194903 *3 (S.D.N.Y. Feb. 27, 2001).

Although the order of filing is a relevant factor, with the first-filed suit generally having priority, *First City Nat'l Bank & Trust Co. v. Simmons,* 878 F.2d 76, 80 (2d Cir.1989), a different result may obtain where the first, declaratory action is filed in response to a direct threat of litigation. "When the declaratory action has been triggered by a notice letter, this equitable consideration may be a factor in the decision to allow the later filed action to proceed to judgment in the plaintiffs' chosen forum." *Factors Etc., Inc. v. Pro Arts, Inc.,* 579 F.2d 215, 219 (2d Cir.1978), *cert. denied,* 440 U.S. 908, 99 S.Ct. 1215, 59 L.Ed.2d 455 (1979). This is consistent with the principle that "[t]he federal declaratory judgment is not a prize to the winner of a race to the courthouses." *Factors Etc.,* 579 F.2d at 219 (quoting *Perez v. Ledesma,* 401 U.S. 82, 119 n. 12, 91 S.Ct. 674, 27 L.Ed.2d 701 (1971) (Brennan, J., dissenting)), *cert. denied,* 440 U.S. 908, 99 S.Ct. 1215, 59 L.Ed.2d 455 (1979).

In *BuddyUSA, Inc. v. Recording Industry Ass'n of America, Inc.,* 21 Fed.Appx. 52, 2001 WL 1220548 (2d Cir.2001)[8], the Second Circuit, examining the case law in this area, stated that "[f]ollowing *Factors,* district courts have typically found an exception to the first-filed rule where declaratory actions are filed in response to demand letters that give specific warnings as to deadlines and subsequent legal action." 21 Fed.Appx. at 55. For example, in *Federal Ins. Co. v. May Dep't Stores Co.,* 808 F.Supp. 347 (S.D.N.Y.1992), the court inferred forum shopping from the fact that the declaratory action was filed after receipt of a letter notice from the defendant stating that if the sender's claim was not

**8.** Although *BuddyUSA* was not selected for publication in the Federal Reporter and may not be cited as precedential authority, it is cited here only for its discussion of *other* cases.

satisfied by a specific date, it would sue. *Id.* at 350.

■ By contrast, the *BuddyUSA* court stated, "district courts have often refused to characterize a suit as anticipatory where it is filed in response to a notice letter that does not explicitly 'inform[ ] a defendant of the intention to file suit, a filing date, and/or a specific forum for the filing of the suit ....'" *BuddyUSA*, 21 Fed.Appx. at 55 (quoting *J. Lyons & Co., Ltd. v. Republic of Tea, Inc.*, 892 F.Supp. 486, 491 (S.D.N.Y.1995)). Thus, a declaratory action is generally not considered to be anticipatory where it is filed in response to a letter that indicates a desire to negotiate, rather than an intent to sue. *See, e.g., Employers Ins. of Wausau v. Prudential Ins. Co. of America*, 763 F.Supp. 46, 49 (S.D.N.Y.1991) (allowing declaratory action filed in response to a notice letter stating that the sender "hoped to avoid litigation" to proceed over second-filed coercive action).

■ In the case at bar, the May 11, 2001 class action demand and notice (which was served by certified mail on May 14), states, "Unless you agree in writing to make [certain] payments in full and reimburse [Mr. Seifer] for his lost equity and Special Membership interest within thirty (30) days from the date of this letter, we will file a class action lawsuit seeking these payments and all other appropriate damages, relief, costs and attorneys fees." Complaint Ex. D. Plaintiffs filed the complaint in this action on May 25, 2001. In my view, that is indicative of forum shopping by plaintiffs, which weighs in favor of declining to exercise this court's jurisdiction in this case, and allowing the issues presented to be litigated in the class action that is now proceeding in Oregon state court. *See Marriott PLP Corp. v. Tuschman*, 904 F.Supp. 461, 468–69 (D.Md.1995) (declining to grant relief in action seeking declaration that plaintiff had not violated Securities Act of 1933, where, at the time plaintiffs filed suit, they were aware that substantially identical litigation was imminent and that, in all probability, it would be filed in Texas state court), *aff'd*, 97 F.3d 1448 (4th Cir.1996); *909 Corp. v. Bolingbrook Police Pension Fund*, 741 F.Supp. 1290, 1292–93 (S.D.Tex.1990) (dismissing anticipatory declaratory judgment action under Securities Exchange Act of 1934, in favor of second-filed action in Illinois district court).

Consideration of the other factors relevant to the exercise of this court's discretion over plaintiffs' claims for declaratory relief reinforces my belief that it would be preferable to dismiss plaintiffs' complaint, in favor of the class action and other litigation currently pending in Oregon. It appears that many of the same factual issues, and similar legal issues, raised by the complaint in the instant case are also presented in the class action, and I see no reason why those issues cannot be adequately litigated there. In addition, many, and perhaps most, of the relevant events appear to have taken place in Oregon, where much of the evidence is probably located as well. Litigating these matters in the class action only will also avoid the danger of duplicative proceedings and conflicting results. It also makes more sense for the parties to deal with actual claims and issues that have been squarely presented in the class action, rather than with anticipated claims here that may never in fact arise.[9]

## CONCLUSION

Defendants' motions to dismiss the complaint (Docket Items 3 and 13) are granted, and the complaint is dismissed.

---

9. My conclusion that the complaint should be dismissed for lack of personal jurisdiction, and in the exercise of the court's discretion under 28 U.S.C. § 2201(a), makes it unnecessary for me to address defendants' arguments concerning improper venue and due process.

Plaintiffs' motion to stay the Blue Line Farms action that had been pending in the United States District Court for the District of Oregon (Docket Item 9) is denied as moot.

IT IS SO ORDERED.